## McGann Unemployment Compensation Case.

380

Argued March 15 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Louis H. Wilderman,* for appellant.

*Richard H. Wagner,* Assistant Special Deputy Attorney General, with him *William L. Hammond,* Special Deputy Attorney General, and *T. McKeen Chidsey,* Attorney General, for appellee.

*Bernard J. Duffy, Jr.,* with him *Robert G. Kelly,* for intervenor, appellee.

OPINION BY RENO, J., November 9, 1948:

Appellant is a member and the president of Local 1242, Steamship Clerks and Checkers, International Longshoremen's Association, and had been employed for three months as a checker and clerk by J. A. McCarthy Company. He is one of over 2400 claimants who are members of various unions of the Longshoremen's Association. They had been employed by various steamship and stevedoring companies along the Philadelphia waterfront.

A labor dispute arose between the steamship companies on one side and the Marine Engineers Beneficial Association and the Masters, Mates and Pilots Union on the other. The unions called a strike against the various steamship companies by which their members were employed in New York, Philadelphia and Baltimore. Appellant and the other claimants are not members of either of the two striking unions. On October 1, 1946, the striking unions stopped all imports and exports, and picketed both American and foreign ships along the entire Philadelphia waterfront. In New York and Baltimore the loading and unloading of foreign ships was continued without interference and only American ships were picketed.

As a result of the labor dispute the claimants became unemployed. The bureau decided their unemployment was not due to a voluntary suspension of work within the meaning of §402 (d) of the Unemployment Compensation Law, and were entitled to benefits without imposing the prescribed disqualifying period. The employer appealed to the referee who affirmed the bureau's decision. The employer then appealed to the board, and the prior determination was reversed. It held that the unemployment was voluntary, and claimants were temporarily disqualified under §402 (d). The claimants have appealed from that decision, and the employer was allowed to intervene as an appellee. The employer's brief supports the decision of the board.

To facilitate this appeal and to avoid separate appeals of the more than 2400 cases, the board vacated its decision as to all claimants except Joseph Kushman (No. 240 October Term, 1947), Frank H. McGann (No. 241 October Term, 1947) and Thomas J. Byrne (No. 242 October Term, 1947). It has been agreed between counsel that our decision on this appeal shall determine the Kushman and Byrne appeals and in turn also decide the eligibility of all other claimants for benefits.

The questions which we are called upon to decide are: (1) Whether appellant's refusal to cross the picket line constitutes a voluntary act so as to disqualify him from unemployment compensation benefits during the period prescribed by §402 (d); and (2) Whether there is substantial, competent evidence to support the board's findings that such refusal was voluntary under the circumstances.

It is admitted that appellant's unemployment "resulted from an industrial dispute." The pertinent provision of the Unemployment Compensation Law, §402 (d), as amended by the Act of April 23, 1942, P. L. 60, §4, and the Act of May 29, 1945, P. L. 1145, §9, provides in substance that an employe is ineligible for compensation for any week in which his unemployment is due to a voluntary suspension of work resulting from an industrial dispute. The disqualification applies only for the period of unemployment and not for more than four calendar weeks. (The further amendment of June 30, 1947, P. L. 1186, §2, 43 PS §802, is not involved in this appeal.)

We have previously discussed at some length the meaning of the word "voluntary" as used in §402 (d). *Stillman Unemployment Compensation Case,* 161 Pa. Superior Ct. 569, 56 A. 2d 380; *Phillips Unemployment Compensation Case,* 163 Pa. Superior Ct. 374, 61 A. 2d 84. In both instances we denied compensation on the ground that the employe's refusal to cross a picket line was a voluntary suspension of work within the meaning of §402 (d).

Appellant would have us distinguish the *Stillman* case, supra, and like decisions, mainly on the basis that in the *Stillman* case there was no evidence of violence and that there is such evidence here. We agree with the argument that if he was prevented from peacefully pursuing his employment "because of the militant attitude of the picket line, because of incidents of violence, and because of threats of physical violence", his unemployment would be involuntary.

The board found that the claimants were not threatened with any injury nor were there any threats or attempts at violence to prevent him from passing through to work. Its seventh finding of fact follows: "7. The claimants would have been willing to work on the foreign ships had the striking unions been willing to confine their picket lines exclusively to American ships. The claimants were not, however, willing to cross the picket lines. They were not prevented by violence, threats or intimidation from crossing the lines; no violence was practiced or threatened on the picket lines and the only 'violence' which took place was when some of the claimants went to a picket line and ridiculed some of the pickets. The pickets followed them to a nearby tap room and a 'scuffle' ensued. The failure of the claimants to cross the picket line was due almost entirely, if not altogether, to their unwillingness in principle to cross a picket line and the unemployment for which claims were filed during the period in question was due to their determination to refrain from working rather than to cross the picket line."

The board's findings of fact if supported by substantial and competent evidence are binding upon us in the absence of fraud. Unemployment Compensation Law, §510, 43 PS §830; *Miller v. Unemployment Compensation Board of Review,* 152 Pa. Superior Ct. 315, 31 A. 2d 740; *D'Yantone Unemployment Compensation Case,* 159 Pa. Superior Ct. 15, 46 A. 2d 525; *Hall v. Unemployment Compensation Board of Review,* 160 Pa. Superior Ct. 65, 49 A. 2d 872.

The testimony shows that when appellant reported for work he found pickets at the gate and "to avoid any kind of conflict or violence with them [he] turned around and went home." No attempt was ever made to cross the picket line. His testimony was that he would not do so mainly because he did not want to create any violence or risk of harm to himself and secondly as a matter of principle. There was not a single act of

violence, or any threat to do bodily harm to the appellant or the other claimants.

Stress is laid upon the testimony of the vice president of the Longshoremen's Association, and it is contended that upon his testimony alone a finding of violence at the picket line could and should have been predicated. He was asked by counsel for the employer whether at a strikers' meeting he had stated: "Piers 19 and 38 was picketed. Pier 38 at Allegheny Avenue we advised them to go in regardless and we are working those places." Before the witness could answer the question, claimants' counsel interjected: "Why don't you go through the whole thing. The next sentence is that 'We asked them to withdraw pickets at Pier 5. They doubled the pickets and knocked us out at Pier 5.'" Whereupon the witness answered: "That's right. They doubled it." It cannot be said that his testimony amounts to more than an assertion that the pickets were doubled at Pier 5. However, even if this testimony could be taken to include the statement that claimants were "knocked out at Pier 5", a finding of violence would not necessarily follow. Webster ascribes that meaning to the phrase in boxing jargon, but it has likewise other connotations. The board very properly refused to base a finding upon this equivocal evidence, an isolated statement, amounting at most to a mere scintilla of proof.

At the hearing before the board additional testimony was offered. A member of the strike committee of the Masters, Mates and Pilots testified that his union had announced that it would resist with violence any attempt to break its picket lines. He testified to an occurrence where some men had been drinking, and that they had "ridiculed" the pickets who followed them back to a tap room where there was a "scuffle". The witness did not identify any of the claimants as members of that group. His statement that the striking unions would have repelled any attempt to cross the picket line amounts only to an undisclosed intention to do violence.

There is no evidence of any attempt to cross the picket line peacefully or by force. We conclude that the board's findings that the claimants made no effort to cross the picket lines, that they were not actually threatened, and that there was no attempted violence are supported by substantial and competent evidence.

The mere statement by a claimant that he refused to cross a picket line because of fear of bodily harm is not enough to demonstrate that his unemployment was involuntary in a situation where there was not a single overt act of violence of any character, leading a reasonable person to believe that he would be in physical danger in the event he attempted to cross the picket lines. A non-striker's fear of injury must be real and substantial and not nebulous. Strike and picket lines are not always accompanied by violence, intimidation and physical restraint. In the absence of evidence to the contrary we may assume that picketing is carried on peacefully and within the limits permitted by law.

*Steamship Trade Assn. of Baltimore, Inc., v. Davis, et al.,* —— Md. ——, 57 A. 2d 818, illustrates the principle. Seemingly it relates to the Baltimore counterpart of the same labor dispute with which this appeal is concerned. The Masters, Mates and Pilots Union and the Marine Engineers Beneficial Association called the strike. The claimants were members of the Longshoremen's Association who became unemployed due to the labor dispute. The board found the longshoremen had attempted to cross picket lines but withdrew when the threatening attitude of the strikers indicated that there might be considerable trouble. The Superior Court of Baltimore City and the Court of Appeals affirmed the board's decision that the claimants' unemployment was due to a fear of physical violence, and they were allowed compensation. The evidence disclosed the pickets were armed with clubs and other weapons. They dared the longshoremen to go through the picket lines and threatened the lives of the longshoremen on various occasions.

The appellants, who were the employers, admitted that the claimants had good reason to fear violence. Had the record before us disclosed that the strike in Philadelphia had developed a similar situation, appellant would have made out a case for benefits.

We find appellant has not overcome the board's finding that the suspension of work was voluntary, and therefore appellant was properly denied benefits during the disqualifying period fixed by §402 (d).

The decision in this appeal and those at Nos. 240 and 242 October Term, 1947, are affirmed.