## Phillips Unemployment Compensation Case.

Argued March 16, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Louis H. Wilderman,* for appellant.

*Roland M. Morgan, William L. Hammond,* Special Deputy Attorney General, and *T. McKeen Chidsey,* Attorney General for appellee.

OPINION BY RENO, J., November 9, 1948:

The Lanston Monotype Company employed 429 persons on May 20, 1946. Office Employees Union, Local No. 14, comprising 50 members, called a strike. Appellant was a member of Local No. 1216 of the Machinists International Association which consisted of 260 members. The remaining 119 employees were not members of either union. When members of the Machinists Union appeared for work on May 20, 1946, they discovered the office employees had established a picket line. Appellant and other members of the Machinists Union refused to cross this picket line. On August 12, 1946, the dispute between the office employees' union and the employer was settled, and appellant returned to work. The referee, reversing the bureau, ruled that appellant's un-

employment was not due to a voluntary suspension of work resulting from an industrial dispute, and was qualified for compensation within the meaning of § 402(d) of the Unemployment Compensation Law. The board reversed the referee and held that appellant's leaving constituted a voluntary suspension of work, and that under § 402(d) he was disqualified for benefits for the week ending May 25, 1946 and the four weeks immediately following. This appeal followed.

The question raised by this appeal is whether the appellant's refusal to cross the picket line maintained by a union of which he was not a member, nor eligible for membership, amounts to a voluntary suspension of work under § 402(d), as amended by the Act of April 23, 1942, P. L. 60, § 4, and the Act of May 29, 1945, P. L. 1145, § 9. (The further amendment of June 30, 1947, P. L. 1186, § 2, 43 PS § 802, is not involved in this appeal.) That section provides: "An employe shall be ineligible for compensation for any week . . . (d) In which his unemployment is due to a voluntary suspension of work resulting from an industrial dispute, at the factory establishment or other premises at which he is or was last employed: Provided, That this disqualification shall apply only to any week of unemployment which, in whole or in part, includes any part of a period beginning with the day on which such suspension occurs and ending with (i) the last day of the fourth calendar week immediately following the calendar week in which such suspension occurs, or (ii) the day on which such suspension was terminated, whichever is the earlier."

It is conceded that claimant's unemployment resulted from an industrial dispute. However, appellant contends the suspension of work was involuntary since his decision not to cross the picket line was made for him and not by him.

It should first be pointed out that in § 402(d) the word "voluntary" had not been changed, and that only

in § 402(b) was "voluntary" amended by adding the words "good cause". When we referred to "voluntarily leaving" in *Teicher Unemployment Compensation Case,* 154 Pa. Superior Ct. 250, 35 A. 2d 739, and the *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior Ct. 548, 45 A. 2d 898, we were concerned with "voluntarily leaving work without good cause" under § 402(b), and those decisions are here irrelevant.

A voluntary act is one done intentionally and proceeding from the will of the actor. The fact that appellant may have had good cause for refusal to cross the picket line is not important so long as the decision was his own. We stated in *Stillman Unemployment Compensation Case,* 161 Pa. Superior Ct. 569, 572, 56 A. 2d 380, in defining "voluntary" within the meaning of § 402(d) that " 'Voluntary' in this context connotes a suspension of work resulting from the decision of the employe, as distinguished from a dismissal or discharge or lay-off by the employer".

The testimony discloses appellant's reason for failing to return to work was that he "didn't like to try crossing the picket line and causing trouble". When he was asked who decided whether the members of his union would or would not cross the picket line he replied: "No decision was made. . . . They just saw a picket line there and didn't cross it." Even though extraneous factors may have influenced the decision, still it was made of his own volition.

If an employe is prevented from working through no act of his own, as where he is forcibly barred from working, he would be entitled to compensation. But if a picket line is maintained within the limits permitted by law and there is no physical compulsion exerted to prevent employes from passing the picket line, nonstrikers are unemployed solely by their own choice. *Bodinson Manufacturing Company v. California Employment Commission,* 17 Cal. (2d) 321, 109 P. 2d 935.

Appellant was not what President Judge KELLER in *Miller v. Unemployment Compensation Board of Review*, 152 Pa. Superior Ct. 315, 321, 31 A. 2d 740, termed an "innocent bystander". His adherence to union principles dictated his decision not to cross the picket line, and he made the strikers' cause his own by voluntarily suspending his own work.

Appellant's second assignment of error concerns the board's additional finding of fact: "Work was at all times available to the claimants throughout the suspension of operations and on May 28, 1946, the company so notified the employees, when notices to this effect were mailed together with pay checks. Such notice contained in part the following statement: 'For your information the plant of the Lanston Monotype Machine Company is open and will continue to remain open during regular working hours.' "

There was testimony that on the day of the strike the front door was opened about the middle of the morning, that the factory manager had the door open every day, and that the employer sent notices to all employees that the plant would remain open during regular working hours. There also was testimony that at least five supervisory employees were at the plant after May 28 to direct the work of the employees. This evidence supports the finding, and is binding upon us. Unemployment Compensation Law, § 510, 43 PS § 830; *Hall v. Unemployment Compensation Board of Review*, 160 Pa. Superior Ct. 65, 49 A. 2d 872; *D'Yantone Unemployment Compensation Case*, 159 Pa. Superior Ct. 15, 46 A. 2d 525.

Appellant further contends that the board erred in finding the entrances to the company were unlocked and that those desiring to enter experienced no difficulty in this respect. The testimony clearly indicates that appellant and the other members of his union made no attempt to cross the picket line to determine if the doors were locked. Appellant states that after the hearing

before the referee a further investigation showed that when the doors were closed they could not be opened from the outside. The doors to the Locust Street entrance, where members of the Machinists Union were accustomed to reporting, were usually in the charge of a member of that union and therefore on the morning of the strike these doors were not open. Later, that morning, when officials of the company got inside, they opened the doors on the 24th Street side and several employees of the company entered the building. Therefore we find that there is a rational basis for the board's conclusion that the entrances were unlocked, and that those desirous of entering experienced no difficulty. Our review is confined to questions of law and we cannot disturb the board's findings of fact where they are predicated upon substantial and competent evidence. *Stillman Unemployment Compensation Case,* supra.

Decision affirmed.