Myers Unemployment Compensation Case.

Eastern Gas & Fuel Associates, Appellant, *v.*
Unemployment Compensation Board
of Review et al.

Argued September 29, 1948. Before RHODES, P. J.,
HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Frank G. Smith,* with him *Robert V. Maine, Frank A. Whitsett, Robert I. Reed, Arthur A. Waltenbaugh* and *Smith & Maine,* for appellant.

*Richard H. Wagner,* with him *William L. Hammond,* Special Deputy Attorney General, and *T. McKeen Chidsey,* Attorney General, for appellee.

*Samuel R. DiFrancesco,* for intervenor, appellee.

OPINION BY RENO, J., January 14, 1949:

Appellant, operator of coal mines, discharged a supervising employe on July 31, 1946, refused to reinstate him, and his fellow-employes, members of the United Clerical, Supervisory and Technical Workers Union, struck and refused to return to work. Claimant, Martin J. Myers, and 670 miners, members of the United Mine Workers also refused to work, alleging that the mine was gaseous and that the absence of a sufficient number of inspecting and supervising employes caused work in the mines to be dangerous. The board found that claimant remained away from the mine because of fear for his own safety and not in support of the supervisors' strike. Accordingly, it held that claimant's "unemployment was [not] due to a voluntary suspension of work resulting from an industrial dispute", within the meaning of the Unemployment Compensation Law, §402 (d), 43 PS §802, as it stood before the amendment of June 30, 1947, P. L. 1186, and that he was justified by good cause in leaving his work under §402 (b). It awarded benefits, and the employer appealed.

After the decision by the board and after the argument before this Court of *Prentice Unemployment Compensation Case,* 161 Pa. Superior Ct. 630, 56 A. 2d 295, but before that case had been decided, appellant applied to the board for a rehearing so that, inter alia, the relation existing between United Clerical Union and the

United Mine Workers might be placed upon the record. The board refused, and this we think was error. Keeping in mind the traditional attitude of union members in respect of a strike by other union employes, the relationship should have been developed, if for no other reason than to establish that claimant left his work solely because of fear that his safety was jeopardized. The proof of the relationship may well be the one factor which will firmly establish the presence or absence of good faith which is the heart of good cause. The other questions referred to in the petition for a rehearing should also be investigated.

The findings as they now stand will not furnish adequate support for the award. The board found that the mine was gaseous, and that in 1940 an explosion occurred in it which resulted in the death of 63 employes. It found also that claimant and "other rank and file employes, believing that it would be unsafe to work", left their work. The reduced number of inspectors was assigned as the basis for the belief that the mine was unsafe.

But there is no finding of the essential fact, or facts, upon which may be founded the conclusion that the claimant's fear had a reasonable basis. Conceivably, fear may constitute good cause, although we do not now decide that question. But certainly a groundless, unreasonable, a pathological or a phantasmal fear will not answer the requirements of good cause. We had occasion recently to examine this question in relation to another context. In *McGann Unemployment Compensation Case* 163 Pa. Superior Ct. 379, 385, 62 A. 2d 87, claimants assigned fear as the reason for their refusal to cross a picket line and return to work. Both the board and the Court rejected the claim. We said: "The mere statement by a claimant that he refused to cross a picket line because of fear of bodily harm is not enough to demonstrate that his unemployment was

involuntary in a situation where there was not a single overt act of violence of any character, leading a reasonable person to believe that he would be in physical danger in the event he attempted to cross the picket lines. *A non-striker's fear of injury must be real and substantial and not nebulous.* Strike and picket lines are not always accompanied by violence, intimidation and physical restraint. In the absence of evidence to the contrary we may assume that picketing is carried on peacefully and within the limits permitted by law." (Emphasis added).

The board's able counsel, who always argues these cases with refreshing frankness, concedes this defect, and suggests that the finding is implicit in the board's conclusion that claimant was justified by good cause. Acceptance of his theory would oblige us to infer the facts from the conclusion, an inversion of logical reasoning with which we would rather not experiment. Even so, which facts should we consider, those included in the findings or those which appellant contends should have been found, or both? For, it will be remembered, that appellant contended that notwithstanding the reduced number of inspectors the mines were safe for work, and perhaps, of equal importance, that claimant made no inquiry to determine what steps had been taken by appellant to assure safe operation.

With no desire to prejudge the case at this stage of the proceeding it would seem that eventually it may turn upon the element of good faith as a constituent of good cause. Again there is no adequate finding of fact. The board in its *discussion* says: "However, we have found that their reason for remaining away from work was not a desire to lend support to the suspension, but an honest fear of injury or death". But there is no such determination among the findings of fact. From the evidence findings should be so formulated that, if the conclusion is again reached that the fear was honest, our task upon

review will be to determine only whether the findings are founded upon competent and substantial evidence.

The decision is reversed, and the record is remitted to the board for rehearing and further proceedings consistent with this opinion.