# Urbach Unemployment Compensation Case.

570

Argued April 10, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS ARNOLD and GUNTHER JJ.

*Clyde P. Bailey*, for appellant.

*William L. Hammond*, Special Deputy Attorney General, with him *Robert E. Woodside*, Attorney General and *R. Carlyle Fee*, Associate Counsel, for appellee.

*John E. Laughlin, Jr.*, with him *Charles C. Hewitt*, *Clyde H. Slease* and *Thorp, Reed & Armstrong*, for employer, intervenor, appellee.

OPINION BY RENO, J., September 26, 1951:

This appeal presents another phase of the labor dispute adjudicated in *Hogan Unemployment Compensation Case*, 169 Pa. Superior Ct. 554, 83 A. 2d 386. The strike was instituted by the Marine Workers Union on July 18, 1949, at the plant of the Dravo Corporation, intervening appellee. Appellant was a member of Local No. 449 of the Fabrication Branch of the United Association of Journeymen and Apprentices of the Plumbers and Pipe Fitting Industry of the United States and Canada, and an employe of Dravo. The Board found that appellant and his fellow members were disqualified for benefits under the

Unemployment Compensation Law, §402(d), 43 P.S. §802, which provides: "An employe shall be ineligible for compensation for any week—(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed. . . ."

Succinctly stated, the Board found that the Marine Workers extended its picket line to the area in which the Fabricators were employed on August 4th. Thereupon the Fabricators, who had no grievance against Dravo and for whom work was available at all times, ceased working and did not return to work until after the Marine Workers lifted their picket line on November 7th. The "number of pickets varied from two (on August 4, 1949) to seven or eight, with approximately 100 to 150 present on August 15, 1949." Prior to the latter date the Fabricators endeavored to secure permission from the Marine Workers to cross the picket line and some Fabricators, assuming that permission had been granted, appeared for work and were met at the gates by 100 to 150 Marine Workers' pickets. The Fabricators did not attempt to cross the line. On a bill in equity filed on July 19th in the Court of Common Pleas of Allegheny County, Dravo obtained an injunction on August 15th against the Marine Workers limiting the number of pickets, and requiring them to conduct themselves "in such a manner as not to block the use of any such entrances for ingress or egress by any person on foot or by any automobile or vehicle." Concerning this the Board found: "Despite this injunction members of Local 449 [Fabricators] did not attempt to go to work. They were opposed in principle to crossing a picket line after it had been restricted by court order."

The Board's ultimate finding is: "6. Members of Local 449 [Fabricators] were not prevented during the

period from August 4 to November 7, 1949, from crossing or passing the picket line by reason of violence or threats of violence. Violence occurred on one occasion only and there were no threats of violence giving rise to any honest or reasonable fear of injury. Their failure to cross or pass the picket line was due either to an objection, as a matter of principle to crossing the picket line, both before and after the injunction, or to their adherence to the advice of their officers to observe the picket line."

On these facts, the case is squarely ruled by *Franke Unemployment Compensation Case,* 166 Pa. Superior Ct. 251, 70 A. 2d 461; *Phillips Unemployment Compensation Case,* 163 Pa. Superior Ct. 374, 62 A. 2d 84; *McGann Unemployment Compensation Case,* 163 Pa. Superior Ct. 379, 62 A. 2d 87; *Stillman Unemployment Compensation Case,* 161 Pa. Superior Ct. 569, 56 A. 2d 380.

Appellant's able counsel does not contend that the Board's findings are not evidentially supported. He argues that the findings cannot be sustained without a capricious disregard of other competent testimony which, if believed by the Board, would have resulted in a finding that the Fabricators were restrained from crossing the picket lines by violence and intimidation. With characteristic candor, he confesses "that he has a great burden to meet in this case," an obviously true statement. "Capricious disbelief is not merely disbelieving a witness. To constitute capricious disbelief there must be a wilful, deliberate disbelief of an apparently trustworthy witness, whose testimony one of ordinary intelligence could not possibly challenge or entertain the slightest doubt as to its truth. To charge a judge [or an administrative agency][1] with capricious

---

[1] *Blue Mountain T. & T. Co. v. P. U. C.,* 165 Pa. Superior Ct. 320, 67 A. 2d 441.

disbelief, it must be so flagrant as to be repugnant to a man of reasonable intelligence'': *Pusey's Estate,* 321 Pa. 248, 262, 184 A. 844. "The credibility of the witnesses, the weight of their testimony and the reasonable inferences to be drawn from it are for the board. . . . We cannot, even if we would, substitute our judgment for the board's upon these factors of its decision." *Devlin Unemployment Compensation Case,* 165 Pa. Superior Ct. 153, 156, 67 A. 2d 639.

True, there was violence on the picket line on one occasion. It is mentioned in the Board's sixth finding, supra, and described in its fourth finding. It occurred on *September 8th,* when pickets attacked a truck *leaving* the plant. This incident, resulting from Dravo's attempt to transport material out of its plant, does not indicate violence against the Fabricators or prove that they were subjected to violence or intimidation on *August 4th* and the other intervening working days. In truth, there is no substantial evidence of violence exerted against the Fabricators. Had the testimony of several of Fabricators' officers been accepted the Board might have found that Marine Workers' officers had threatened violence but at most the threats were shadowy and vague, were not accompanied by a show of force, and engendered no fear of injury. Studious examination of the whole record has not convinced us that the Board capriciously disregarded Fabricators' testimony or that we should substitute our judgment upon the evidence for that of the Board.

The case is ruled by the *McGann* case, supra, where we said, p. 385: "We conclude that the board's findings that the claimants made no effort to cross the picket lines, that they were not actually threatened, and that there was no attempted violence are supported by substantial and competent evidence. . . . A nonstriker's fear of injury must be real and substantial and not nebulous."

574

In no event could appellant's claim be allowed, for he left his work on August 4th, procured other employment, and made no effort to return to the Dravo plant until the strike was settled. However, he appealed on behalf of himself and other claimants and we have discussed and decided the case in general terms so that his and the claims of all the Fabricators will be adjudicated by this decision.

Decision affirmed.