Labenski Unemployment Compensation Case.
Glen Alden Coal Co., Appellant, *v.* Unemployment
Compensation Board of Review.

Argued March 4, 1952. Before Rhodes, P. J., Reno, Dithrich, Ross, Arnold and Gunther, JJ. (Hirt, J., absent).

*Franklin B. Gelder*, with him *J. H. Oliver*, for employer, appellant.

*William L. Hammond*, Special Deputy Attorney General, with him *Robert E. Woodside*, Attorney General, for appellee.

*Ralph P. Needle*, with him *Needle, Needle & Needle*, for claimant, intervenor, appellee.

Opinion by Reno, J., July 17, 1952:

The Unemployment Compensation Board of Review awarded benefits to Henry Labenski. His employer, Glen Alden Coal Company appealed, contending that the claimant was disqualified under the Unemployment Compensation Law, §402(a), 43 P.S. §802, which provides: "An employe shall be ineligible for compensation for any week (a) In which his unemployment is due to failure, without good cause, either to apply for suitable work at such time and in such manner as the department may prescribe, or to accept suitable work when offered to him by the employment office or by any employer." Labenski was allowed to intervene as an appellee.

The Law, §4(t), 43 P.S. §753, provides: " 'Suitable Work' means all work which the employe is capable

of performing. In determining whether or not any work is suitable for an individual, the department shall consider the degree of risk involved to his health, safety and morals, his physical fitness, prior training and experience, and the distance of the available work from his residence. The department shall also consider among other factors the length of time he has been unemployed and the reasons therefor, the prospect of obtaining local work in his customary occupation, his previous earnings, the prevailing condition of the labor market generally and particularly in his usual trade or occupation, prevailing wage rates in his usual trade or occupation, and the permanency of his residence. . . ."

The Board's findings present this factual picture. Labenski, aged 32, was employed by appellant at one of its collieries from 1937 to 1949, except the 4 years he spent in the armed forces. In August, 1949, he was laid off because work at the breaker was discontinued, but soon thereafter "he was recalled and given work as a common laborer outside the mines, helping to tear down the breaker." Upon the completion of that work in November he was again laid off. Thereafter his employer offered him "work inside the mines either as a contract laborer or a machine miner." He "refused these jobs because he had never done inside mine work and because of his fear of the possible physical injury to be incurred therein."

The Board further found: "6. Claimant's fear of inside mine work was based upon his first-hand knowledge of the extra hazardous conditions prevailing inside mines, as well as the experiences of members of his own family while engaged in such work. His father had been seriously hurt while working inside the mines, and his brother-in-law had become disabled as the result of silicosis contracted while working therein. Accordingly, claimant's refusal of the proffered employment was predicated upon an honest fear." . . . .

The Board also found: "4. During his eight years of employment with the company, claimant had been classified as a loader and runner. His work consisted of running large railroad cars under the breaker where they were loaded with coal from the breaker chutes, and once the cars were filled, he would then run them to a branch in the yard." Discussing the suitability of the offered employment, the Board said: "As to the question of the suitability of the work from the standpoint of claimant's prior training and experience, we do not believe that there is such a difference between laboring work inside the mines and laboring work outside the mines as to render the work offered the claimant 'unsuitable' in this sense . . ." Nevertheless, the Board awarded benefits on the theory that his fear was honest, and because he had "a reasonable basis in fact for concluding that if he attempted to work inside the mine he would be undertaking more than the ordinary risk attendant to outside mine work which he had always performed." That is to say, that the claimant's honest fear was a good cause for refusing the work. His physical fitness for the work is not questioned.

This Court has several times heretofore discussed the question of fear as an element of, or as a basis for, good cause but never in this factual context.

In *Myers Unemployment Compensation Case,* 164 Pa. Superior Ct. 150, 152, 63 A. 2d 371, where miners left their work because they alleged the mine in which an explosion had killed 63 men was still gaseous and not properly supervised, we said: "Conceivably, fear may constitute good cause, although we do not now decide that question. But certainly a groundless, unreasonable, a pathological or a phantasmal fear will not answer the requirements of good cause."[1]

---

[1] The case was remitted for a rehearing and subsequently the Board refused benefits, finding: "On the basis of the circumstances

In *Suska Unemployment Compensation Case,* 166 Pa. Superior Ct. 293, 296, 70 A. 2d 397, claimant, an assembler in the Westinghouse plant, was temporarily unemployed because of lack of work. She refused offered work at the H. J. Heinz Company because the job involved lifting cans out of a sterilizer and placing them on a conveyor, alleging that previously she had experienced swollen hands when working in water. The Board refused benefits and this Court affirmed in an opinion wherein we said: "It is not inconceivable that apprehension may constitute good cause. That concept must, by necessity, remain flexible and without rigid definition. . . . Without risk of injury the claimant could have given the offered employment a trial and could have acted thereafter in accordance with its effect upon her. Her election to remain idle in these circumstances necessarily reflects upon the good faith of her refusal."

In the cases where claimants became unemployed because they feared to cross peaceful picket lines, compensation was refused by the Board and this Court affirmed. In *McGann Unemployment Compensation Case,* 163 Pa. Superior Ct. 379, 385, 62 A. 2d 87, we said: "The mere statement by a claimant that he refused to cross a picket line because of fear of bodily harm is not enough to demonstrate that his unemployment was involuntary in a situation where there was not a single overt act of violence of any character, leading a reasonable person to believe that he would be in physical danger in the event he attempted to cross the picket lines. A nonstriker's fear of injury must be real and

---

known to the miners during the period in question, there was no reasonable basis for any fear that the mines would be less safe than usual. A reasonable person, under the same circumstances, desiring to work, would have reported to the mine and at least investigated the situation in an effort to continue working." Decision No. 13195-A.

substantial and not nebulous." In *Urbach Unemployment Compensation Case,* 169 Pa. Superior Ct. 569, 573, 83 A. 2d 392, we reiterated the rule.

So, although we have said that fear or apprehension may conceivably constitute good cause, we have never affirmed an award for benefits on that basis. *Filchock Unemployment Compensation Case,* 164 Pa. Superior Ct. 43, 63 A. 2d 355, upon which the Board based its decision, does not fall into the category of what might be termed "the fear cases." That case was based solely upon that term of the definition of suitable work which relates to "his physical fitness." Law, supra, §4(t). The fundamental question was whether the physical condition of the 66 year old employe, resulting from a hernia for which he refused to have an operation, gave him good cause for refusing heavy work inside a mine. The claimant refused the employer's demand that he submit to the operation and alleged he was able and available for lighter inside work. There was no allegation or finding that he refused the employment because he was afraid to work inside the mine. Since he was willing to accept suitable lighter work, compensation was allowed and this Court affirmed.

Thus, free of any constraint imposed by stare decisis, the question is: Is a claimant justified by good cause where he refuses employment found by the Board to be otherwise suitable on the sole ground that he honestly fears the hazards connected with the employment?

It must be conceded, to begin with, that, although coal mining, anthracite and bituminous, is a basic Pennsylvania industry,[2] miners are engaged in a haz-

---

[2] In 1948 there were 178,354 persons employed in the Pennsylvania coal industry, or roughly 10% of the total of 1,808,817 employed in all its industries.

ardous occupation.[3]   But all occupations have their hazards, dangers and perils, differing in degree and kind.   The Workmen's Compensation and the Occupational Disease Acts testify to this.   Life itself is a hazard. Legislation cannot eradicate all hazards, though it may cushion their impact by requiring safeguards and providing for periodical inspections, compensate those who are injured by them, and punish those who do not conduct industries according to law.   If fear is recognized as a good cause for *refusal* of employment, it will operate in respect to all occupations, since none is free from risk, and any perceptible increase of hazard may become the base for a claim of fear. Drawing a fair and just line, with no arbitrary or artificial or unworkable ingredients, between differing degrees and kinds of hazards in variant fields of work would impose a staggering, if not an impossible, task upon administrative and judicial authorities.   The chauffeur of a pleasure automobile may refuse employment as a truck driver because he fears the increased risks; for the same reason the law stenographer may refuse employment in the office of a munitions plant; and the window-cleaner of a four-floor building may refuse work on a ten-floor building.   And shall the coal miner, who reads of an explosion in a mine a hundred miles away and fears a similar occurrence in his mine, be held to be justified by good cause if he quits his employment?   Once fear, induced by an increased or a differing hazard is admitted, the Board and this Court will be launched on an unknown sea without chart or compass.   Without a rigid definition,

---

[3] The Board found: "7. During the years 1947, 1948 and 1949, the National Safety Council's Industrial Frequency and Severity Rates Reports establish that the anthracite coal mining industry had the highest frequency rate of accidents and the highest severity rate of accidents of any industry in the United States."

which in the nature of things cannot be attempted, adjudication will be impossible.

There is a fundamental distinction between fear and foreboding, between the emotional agitation experienced in the presence of an actual and imminent danger and anxiety produced by anticipation of danger. There is an immense difference between fear in the immediate presence of an imminent danger and anxiety created by pondering, without trying or testing, an increase or change of occupational hazards. The employes in the *Maryland* case cited in the *McGann* case, supra, p. 385, feared to cross a line where pickets armed with clubs and other weapons dared them to go through the line and threatened their lives. The employes were in the presence of a real and visible and threatening danger, and compensation was allowed. It is one thing to refuse work in an inadequately supervised gaseous mine with a record of explosions, as in the *Myers* case, supra, and quite another thing to refuse employment in a mine, mill, factory, or other industry which faithfully conforms to the standards of safety required by law.[4] But refusal to accept employment because the hazards of it are different or greater than those to which the employe was accustomed, even though he be oppressed by fear or anxiety, is not good cause within the meaning and intent of the Unemployment Compensation Law.

Unemployment compensation legislation affords economic protection for men and women who are able, willing, and available for work. Law, supra, §401, 43 P.S. §801. It is humanitarian legislation but its benefits accrue only to those who can and do humanity's work. It does not cover the physically and mentally ill, or other groups of unemployables. *Miller Unem-*

---

[4] There is no contention that appellant's mines are not conducted under applicable law.

*ployment Compensation Case,* 158 Pa. Superior Ct. 570, 45 A. 2d 908; *D'Yantone Unemployment Compensation Case,* 159 Pa. Superior Ct. 15, 46 A. 2d 525. It covers only those who can and will face up to the dangers and hazards of this workaday world. A man has an inalienable right to take counsel of his fears and refuse a job, but when he does so he is "out of work through his own choosing", as was said in *Barclay White Co. v. Unemployment Compensation Board of Review,* 356 Pa. 43, 50, 50 A. 2d 336. His own decision removes him from the ambit of the Unemployment Compensation law. He is *not* "unemployed through no fault of [his] own." Law, supra, §3, 43 P.S. §752. Claimant was disqualified for benefits under that section and §402(a), supra.

Decision reversed.