Hanna Unemployment Compensation Case.

418

Argued November 12, 1952. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross and Gunther, JJ. (Arnold, J., absent).

*James Craig Kuhn, Jr.,* with him *Arnold D. Wilner* and *Wilner, Wilner & Kuhn,* for claimants, appellants.

*William L. Hammond,* Special Deputy Attorney General, with him *Robert E. Woodside,* Attorney General, for Unemployment Compensation Board of Review, appellee.

*Charles C. Hewitt,* with him *W. Gordon Rauck* and *Thorp, Reed & Armstrong,* for employer, intervenor, appellee.

OPINION BY RENO, J., January 20, 1953:

These appeals by Regina H. Hanna (No. 156 April Term, 1952) and Rita D. Azzato (No. 160 April Term. 1952) were argued together and one opinion will decide both cases. Both appealed for themselves and on behalf of other claimants from decisions of the Unemployment Compensation Board of Review denying benefits on the ground that claimants had refused to accept suitable referred work in violation of the Unemployment Compensation Law, §402(a), 43 P.S. §802.[1]

At the outset, it should be stated that appellant stands upon the proposition that the Board erred *as a matter of law* in refusing compensation and in finding that the offered work was suitable within the mean-

---

[1] §402(a), 43 P.S. §802: "An employe shall be ineligible for compensation for any week—(a) In which his unemployment is due to failure, without good cause, either to apply for suitable work at such time and in such manner as the department may prescribe, or to accept suitable work when offered to him by the employment office or by any employer: . . ."

ing of the Law, §4(t), 43 P.S. §753. The proposition runs counter to *Fuller Unemployment Compensation Case,* 159 Pa. Superior Ct. 74, 46 A. 2d 510; *Hassey Unemployment Compensation Case,* 162 Pa. Superior Ct. 14, 56 A. 2d 400, and other cases, and we repeat that an issue relating to the suitability of offered employment *raises a question of fact.* "Moreover, where the Board's decision is against the party upon whom rests the burden of proof the question on appellate review is whether the Board's findings of fact are consistent with each other and with its conclusions of law and its order, and can be sustained without capricious disregard of competent evidence; unless the answer is in the negative, the order must be affirmed": *Hogan Unemployment Compensation Case,* 169 Pa. Superior Ct. 554, 559, 83 A. 2d 386. Where there is conflicting testimony the Board is charged with the duty of resolving the differences, to determine the credibility of witnesses, to weigh the testimony, and to draw reasonable inferences from it. On appellate review the testimony is read in the light most favorable to the party for whom the Board has found, giving that party the benefit of every inference which can be logically and reasonably drawn from it. *Stillman Unemployment Compensation Case,* 161 Pa. Superior Ct. 569, 56 A. 2d 380.

I.   Mrs. Hanna was employed by Stackpole Carbon Company at St. Marys until June 27, 1951, when she was laid off for lack of work. She was paid unemployment benefits for 20 weeks, and on November 15, 1951, she was offered employment at Sylvania Electric Products, Inc., at Emporium. There was no work available for married women in St. Marys at that time. She refused the referral, alleging that the traveling distance was excessive and that riding in a car early in the morning produced illness. Prior to 1945 she had worked

for the same company in Emporium for approximately 5 years.

Emporium is located about 20 miles from St. Marys. The Board found: "A bus leaves St. Marys, Pa., at approximately 6:00 a.m. and arrives at Emporium, Pa., at approximately 6:45 a.m. A bus leaves Emporium for St. Marys at 4:00 p.m. The round trip cost of bus transportation between the two points was 70¢," and that appellants and the other claimants "had their choice of two shifts at Sylvania Electric Products, Inc., the first beginning at 7:00 a.m. and ending at 3:30 p.m., the second beginning at 4:00 p.m. and ending at 12:30 a.m." In November, 1951, there were 315 residents of St. Marys and the immediate vicinity employed in Emporium. As to Mrs. Hanna's complaint concerning the effect of riding on automobiles in early morning the Board found: "We again are not impressed by this testimony and give no credence thereto. . . ."

In effect the Board found that St. Marys and Emporium are located in the same labor market area, and that adequate transportation facilities existed between the two points. Since 315 residents of St. Marys worked in Emporium, the finding is not without evidential or rational foundation. The determination of the existence of a definable labor market and related questions are statutorily confided to the Board and its conclusions will not be disturbed in the presence of supporting evidence. The General Assembly, by §4(t), supra, which defines "suitable work", commands the compensation authorities to consider, inter alia, "the distance of the available work from his [claimant's] residence. . . . the length of time he has been unemployed and the reasons therefor, the prospect of obtaining local work in his customary occupation, . . . the prevailing condition of the labor market generally . . . ." "These

legislative standards impose upon the unemployment compensation authorities the duty to study economic conditions prevailing at the time work is offered, and to adjudicate claims in the light of that situation": *Fuller Unemployment Compensation Case,* supra, p. 76.

We can find no fault in the determination of the Board. We know, as all men know, that many workers in many places are compelled to travel many miles from their homes to their work, a time consuming process. Men and women live and work on the economic terms imposed by their chosen environments. When, therefore, the evidence substantially supports the Board's findings of the existence of a labor market area we are bound by it, and workers who, without good cause, refuse work within the area are, within the meaning of the Law's declaration of policy, §3, 43 P.S. §752, unemployed through their own fault.

Mrs. Hanna's real grievance is that the Board did not accept her testimony about the effect of riding on cars in the early morning, and her able counsel argues that the Board capriciously refused credence to her testimony. "Capricious disbelief is not merely disbelieving a witness. To constitute capricious disbelief there must be a wilful, deliberate disbelief of an apparently trustworthy witness, whose testimony one of ordinary intelligence could not possibly challenge or entertain the slightest doubt as to its truth. To charge a judge with capricious disbelief, it must be so flagrant as to be repugnant to a man of reasonable intelligence": *Pusey's Estate,* 321 Pa. 248, 262, 184 A. 844, quoted and followed in *Urbach Unemployment Compensation Case,* 169 Pa. Superior Ct. 569, 573, 83 A. 2d 392. It cannot be truly said that the Board acted capriciously. Mrs. Hanna testified that she worked in Emporium for 5 years and contracted a sinus condition; had her tonsils removed and her teeth fixed in an effort to correct

that condition; and had done little or no automobile riding while working in St. Marys. Without experience after her sinusitis was relieved, she could not foretell with any degree of certainty that car riding in the morning would again cause illness, and the Board could reject her testimony without laying itself open to the charge of capriciousness. She could not flatly declare that the referred work would affect her health without giving "the offered employment a trial and . . . [acting] thereafter in accordance with its effect upon her": *Suska Unemployment Compensation Case,* 166 Pa. Superior Ct. 293, 296, 70 A. 2d 397.

II. Mrs. Azzato's case differs only slightly from Mrs. Hanna's. She too was laid off at the Stackpole plant in St. Marys. Later she was employed at the Sylvania plant in St. Marys and was again laid off. She drew benefits for both periods of unemployment. She was offered work in Emporium, and refused it, for reasons stated in her testimony: "Q. . . . Does that mean you would not accept work outside of St. Marys? A. I can't accept work outside of St. Marys. Q. You can't? A. No. Q. Why? A. I live out of the Borough, and at night—I live some distance from the Borough and there are no street lights, and that means I would have to walk that distance without street lights. It has been done, I have done it once or twice, and the way the cars come in and out, especially when the Casino [tavern] leaves out at night, it is taking a chance." The Board concluded: "Claimant Azzato was afraid to walk the distance to the bus because part of the distance was not illumined. There is no evidence of any potential danger . . .", and denied compensation for her refusal to accept suitable work.

The denial is based upon supporting evidence and is binding upon us. There is no convincing evidence that claimant was subjected to real or imminent dan-

ger or that her fear or apprehension of physical injury was well founded. *Labenski Unemployment Compensation Case,* 171 Pa. Superior Ct. 325, 90 A. 2d 331. Moreover, about the time that she was drawing benefits, she moved from St. Marys to a home 2 miles away; thereby, according to her own testimony, appreciably reducing her availability. She was barred from benefits by the Law, §402(a), supra.

III. Both appeals call for another emphatic statement of the fundamental and guiding principle which governs the administration of the Law. Availability for work includes genuine willingness to work, *Romiski Unemployment Compensation Case,* 169 Pa. Superior Ct. 106, 82 A. 2d 565, and willingness to work imports a sincere desire for work that will overcome the surmountable obstacles which workers everywhere encounter. *Brilhart Unemployment Compensation Case,* 159 Pa. Superior Ct. 567, 49 A. 2d 260.

Decisions affirmed.