272 P.2d 699

WOLFGRAM

v.

EMPLOYMENT SECURITY AGENCY.

No. 8094.

Supreme Court of Idaho.

July 7, 1954.

Walter M. Oros, Boise, for appellant.

Robert E. Smylie, Atty. Gen., and John W. Gunn, Asst. Atty. Gen., for respondent.

Robert E. Brown, Brown & Peacock, Kellogg, as amicus curiae.

GIVENS, Justice.

Claimant made initial claim for unemployment benefits February 10, 1953 to the Employment Security office in Wallace, naming Day Mines, Inc., as his last employer from November 1952 to February 7, 1953 and his occupation as cager and motorman, and cause of being laid off, plant curtailment.

Claimant had worked for various mines and particularly the Morning Mine in 1939, in and around Wallace as a mucker, miner, cager, and motorman until 1941, when he went to the South Pacific Islands. He returned to the States in 1946 and again went to work for the Morning Mine as a miner, but worked as cager and timber helper. He stated the Lucky Friday, Tamarack and Sunset mines were not as hot as the Morning.

The Appeals Examiner, in denying compensation, made these Findings of Fact, and Decision:

> "On March 27, 1953, claimant, experienced in underground work, was referred to the Federal Mining and Smelting Company, Wallace, Idaho,

as a laborer which work claimant refused on the grounds that he is susceptible to heat rash and the Morning Mine, in which he thought he would be working, was usually hot and that he would again get the rash. Claimant submitted no medical evidence with respect to this condition.

"It is well established that all mines are very much the same, having both hot and cold work stations. Claimant did not ascertain as to what section of the mine or what type of job he would have been placed on but took it for granted that because of having the rash on previous occasions, that he would again get it in this one mine only."

&ast; &ast; &ast; &ast; &ast; &ast;

"In determining whether or not work is suitable, for an individual, the degree of risk involved to his health, safety, morals, his physical fitness, experience, training, past earnings, length of unemployment and prospects for obtaining local employment in his customary occupation are to be considered. Although claimant had been a cager and motorman for the past several years, there was no showing that he would be employed in this occupation in the near future. He was qualified for other underground work. There is no conclusive showing that the work to which he was referred on March 27, would have been any more detrimental to him than a referral of similar work to any other mine in the area. Claimant, without attempting to determine the nature and characteristics of the job, determined that he did not wish to accept it and so refused. The worker may establish good cause by showing substantiating evidence that the work would be detrimental to him. The condition which claimant contends he is afflicted with is not substantiated by medical advice or authority and claimant has never, at any time, treated for this condition. He is not sure that it is the heat which causes this particular skin difficulty."

"Wherefore, By reason of the foregoing Findings of Fact and Conclusions of Law, it is hereby Determined:

"That the claimant refused an offer of suitable work without good cause and benefits are denied effective February 8, until he has had at least thirty days bona fide employment and received wages therefrom and again becomes unemployed through no fault of his own."

On appeal to the Industrial Accident Board, no further testimony was taken and it merely affirmed the decision of the Appeals Examiner.

It is only when the witnesses appear in person before the Board that its findings are binding on us. Mandes v. Employment Security Agency, 74 Idaho 23, 255 P.2d 1049.

On the one hand claimant, by his own evidence, showed that under certain conditions, both in the mines around Wallace and his work overseas, he was sometimes, above and below ground, afflicted with what he called heat rash; that sweating didn't bother him and exposure to the sun generally did not cause it.

The burden of proof was upon claimant to establish his eligibility for work and in that connection, what conditions would be injurious to his health. Though he had never specifically notified his employers that, or what, conditions caused him to have heat rash, there is an inference they had some knowledge as to his reaction to certain conditions in some of the mines. Apparently he had consulted a physician in connection therewith and referred to him in his testimony as being readily available as a witness. It was, therefore, incumbent upon him to have produced medical testimony, Beecham v. Falstaff Brewing Corp., 150 Neb. 792, 36 N.W.2d 233, showing with reasonable certainty what was the cause of his heat rash and what conditions underground or above ground, in connection with mines in the area where he was asking for employment, would or would not cause the heat rash.

On the other hand, the referral was for 'miner,' which the record indicates was a generic term and included various specific activities. The main basis of the refusal by the Appeals Examiner was that claimant had not further investigated the referral. He did go to the office of the suggested employer, but Les Markel, evidently the person in charge of the employment service, was not there and only a young lady secretary was in the office. On the introduction card the employer, himself, stated the refusal was of the Morning offer —evidently meaning the Morning Mine— and also, 'Claimant says he gets heat rash.'

It is incumbent upon a claimant to actively seek work. The record herein does not disclose exactly what took place when claimant applied for the work offered in the referral. The hearing should have ascertained exactly what work was offered and the extent to which claimant investigated and pursued such offer, and the probable effect upon him of such offered employment. The record in this respect is too indefinite and uncertain. Department of Labor and Industry v. Unemployment Compensation Board of Review, 159 Pa. Super. 571, 49 A.2d 259; Glen Alden Coal Co. v. Unemployment Compensation Board of Review, 171 Pa.Super. 325, 90 A.2d 331; Muncie Foundry Division, etc., v. Review Board of Employment, Security Division, 114 Ind.App. 475, 51 N.E.2d 891.

The prospective employer certainly was in a better position to know what position was open to and available for claimant. than claimant was. Hassey v. Unemploy-

394

ment Compensation Board of Review, 162 Pa.Super. 14, 56 A.2d 400.

The hearing before the Appeals Examiner, if solely relied on by the Board, should be more than a preliminary investigation and herein it was not the complete hearing that should have been had before the Board in ultimately determining a controversy of this kind.

· Various surmises and conjectures are referred to in the briefs of respondent and amicus curiae, without any evidence in the record to support same, and the evidence is entirely unsatisfactory upon which to base an award allowing or disallowing payments. Solution should not rest on speculation. Hallahan v. Riley, 94 N.H. 48, 45 A.2d 886.

■ In Hagadone v. Kirkpatrick, 66 Idaho 55, 154 P.2d 181, we quoted with approval from Feuling v. Farmers' Co-op. Ditch Company, 54 Idaho 326, 31 P.2d 683, that a duty devolves upon the Board and, in turn primarily it would be upon the Appeals Examiner, where the Board acts solely on the evidence before him, to require reasonably conclusive evidence, if available to establish the facts, be secured.

The statute is clear that health, physical fitness and experience are to be considered in determining whether or not the offered employment is suitable and claimant is eligible. Section 72–1366(i), I.C.

■ If claimant's physical condition is such that he cannot work at any employment connected with mining in the particular area where he seeks a referral, he is not eligible and must seek other employment which is not injurious to him. Berthiaume v. Christgau, 218 Minn. 65, 15 N.W.2d 115; Fannon v. Federal Cartridge Corp., 219 Minn. 306, 18 N.W.2d 249, 158 A.L.R. 389.

■ On the other hand, if certain work can be performed in and about mines by claimant and such is available, the employer by offering other work which the claimant may not take without injury to his health, cannot make claimant ineligible because of his good faith refusal thereof, based on resultant injury to his health.

Because of the unsatisfactory and indefinite condition of the evidence, the Order of the Board is reversed and the cause remanded for the Board to hear evidence upon the effect on claimant of the conditions incident to the specific employment available to him and to which he was referred. Broadway v. Bolar, 33 Ala.App. 57, 29 So.2d 687. We find ample and cogent support for our conclusion herein in Krauss v. A. & M. Karagheusian, Inc., 13 N.J. 447, 100 A.2d 277.

Costs awarded to claimant.

PORTER, C. J., and THOMAS, J., concur.

KEETON, Justice, with whom TAYLOR, Justice, concurs (dissenting).

The majority opinion in this case correctly states the rule that the burden is on

the claimant to establish his eligibility for work and in that connection what conditions would be injurious to his health, and that it is incumbent upon him to produce evidence showing with reasonable certainty what conditions would cause the rash.

Having failed to sustain the burden of proof, the Board and Examiner were correct in their conclusion that claimant was not eligible for unemployment security benefits. The Board and Examiner having held adversely to the claimant, and the majority opinion having recognized that the claim is not sustained by the evidence, there is no occasion for further hearing.

The record shows that the hearing before the Board was held pursuant to notice and by agreement of the parties. The claimant appeared in person and with J. L. Cochran, International Representative, Mine, Mill & Smelter Workers. The Agency made no appearance, and the Board on its own motion appointed Walter M. Oros to advise the claimant as amicus curiae. After consultation the Board was advised by claimant that there was no additional testimony to be offered. The matter was then taken under advisement, and Mr. Oros, and the Attorney General's office, were given an opportunity to make arguments. The record shows that all evidence offered was received. Neither the Board nor the Examiner was required to produce evidence for the applicant. The order appealed from should be affirmed.