**The WASHINGTON POST COMPANY, Petitioner,**

v.

**DISTRICT UNEMPLOYMENT COMPENSATION BOARD, Respondent.**

**No. 11372.**

District of Columbia Court of Appeals.

Argued April 22, 1977.

Decided Oct. 25, 1977.

Kenneth F. Hickey, Washington, D. C., with whom Nancy L. Griffin, Washington, D. C., was on the reply brief, for petitioner. Michael A. Caldwell, Washington, D. C., was on the brief. Richard C. Hotvedt, Washington, D. C., entered an appearance for petitioner.

Bill L. Smith, Washington, D. C., with whom Robert J. Hallock, Russell L. Carter, Washington, D. C. and Earl S. Vass, Jr., Richmond, Va., were on the brief, for respondent.

Before KELLY, NEBEKER and YEAGLEY, Associate Judges.

KELLY, Associate Judge:

This appeal is from an order of the District of Columbia Unemployment Compensation Board (hereinafter the Board) finding claimant qualified and eligible for unemployment compensation benefits. The appeals examiner concluded: (1) that the claimant was not unemployed as a direct result of a labor dispute still in active progress, or his participation therein; and (2) that the claimant was involuntarily dismissed from his employment for failing to return to work as directed by his employer. The Board affirmed the appeals examiner's decision without modification. Petitioner contends that the Board's findings are not supported by substantial evidence. We agree and therefore reverse.

The claimant, Ralph McMillan, was last employed as an administrative clerk in the Washington Post's Publication Department.

At all times Mr. McMillan was, and continues to be, a member and officer of the Washington-Baltimore Newspaper Guild, Local 35 (hereinafter the Guild). On October 1, 1975, the International Printing and Graphic Communications Union, Local 6, struck the petitioner and posted a picket line. The Guild Executive Board issued a directive on the same date ordering its members not to cross the picket line. Mr. McMillan chose to comply with the directive and has not returned to work since.

On April 6, 1976, claimant received a letter instructing him to return to work by April 12, 1976. The letter concluded by stating that if the claimant did not return to work by that date, petitioner would consider that the claimant had resigned and would take steps to permanently replace him. The claimant responded by sending a letter to petitioner stating that he had no intention of resigning his position and that he intended to return as soon as the picket lines were removed. After Mr. McMillan did not return to work, he was sent a check for his accrued vacation benefits pursuant to a request for such a payment to strikers by the Guild representative. Claimant was informed that he had received this vacation pay because he had "constructively resigned." On May 10, 1976, the claimant filed a claim for unemployment compensation stating that his reason for leaving his last job was that he was "on strike and finally replaced."

██ Initially, we note that the scope of review here "is limited to questions of law

and . . . to a determination of whether or not the findings of the compensation authorities are supported by competent evidence." *Green v. District Unemployment Compensation Board*, D.C.App., 346 A.2d 252, 255 (1975), *quoting Coulter v. Commonwealth, Unemployment Compensation Board of Review*, 16 Pa.Cmwlth. 462, 332 A.2d 876 (1975). *See* D.C.Code 1973, § 1–1510. *See also Wallace v. District Unemployment Compensation Board*, D.C.App., 294 A.2d 177, 178–79 (1972). Moreover, the Board's findings and conclusions are conclusive upon this court if supported by evidence in the whole of the administrative record. *Hill v. District Unemployment Compensation Board*, D.C.App., 302 A.2d 226, 228 (1973); D.C.Code 1973, § 46–311(f). However, after a review of the record, we conclude that the evidence was insufficient to support the Board's findings.[1]

██ Pursuant to Section 10(f) of the Unemployment Compensation Act,[2] the factual inquiry which is dispositive of the issue of the claimant's eligibility for benefits is whether his unemployment was proximately caused by a labor dispute at his employer's premises. The evidence in the record indicates that claimant's failure to return to work was an entirely voluntary decision. Mr. McMillan chose to comply with the Guild's directive to honor the picket lines which were established at the Washington Post. In his written correspondence with petitioner, Mr. McMillan stated that he would not return to work until the strike was settled. In addition, the claimant ad-

---

1. D.C.Code 1973, § 1–1510(3)(E), provides in part, that this court may

    set aside any action or findings and conclusions [by an agency of the District of Columbia] found to be . . . unsupported by substantial evidence in the record of the proceedings before the court.

2. D.C.Code 1973, § 46–310(f) provides:

    An individual shall not be eligible for benefits with respect to any week if it has been found by the Board that such individual is unemployed in such week as a direct result of a labor dispute still in active progress in the establishment where he is or was last employed: *Provided*, That this subsection shall not apply if it is shown to the satisfaction of the Board that—

    (1) he is not participating in or directly interested in the labor dispute which caused his unemployment; and

    (2) he does not belong to a grade or class of workers of which, immediately before the commencement of the dispute, there were members employed at the premises at which the dispute occurs, any of whom are participating in or directly interested in the dispute: *Provided*, That if in any case separate branches of work which are commonly conducted as separate businesses in separate premises are conducted in separate departments of the same premises, each such department shall, for the purposes of this subsection, be deemed to be a separate factory, establishment, or other premises.

mitted that he and other Guild members who have continued to strike against petitioner have been receiving checks for strike benefits in the amount of $60 per week.

A voluntary failure or refusal by a member of a non-striking union to pass through a picket line at his place of employment has consistently been held to constitute active participation in a labor dispute. *Unemployment Compensation Board of Review v. Tickle,* 19 Pa.Cmwlth. 550, 339 A.2d 864, (1975); *Baltimore Typographical Union No. 12, Truck Drivers & Helpers Union No. 355 et al. v. Hearst Corp.,* 246 Md. 308, 228 A.2d 410 (1967); *Basso v. News Syndicate Co., Inc.,* 90 N.J.Super. 150, 216 A.2d 597 (1966); *Mancini v. Administrator, Unemployment Compensation Act et al.,* 24 Conn. Sup. 461, 194 A.2d 540 (1963); *Marczi et al. v. Board of Review, Division of Employment Security, New Jersey Dept. of Labor and Industry,* 63 N.J.Super. 75, 163 A.2d 723 (1960). Moreover, such a voluntary work stoppage necessitates a claimant's disqualification from the receipt of unemployment compensation.[3] *Unemployment Compensation Board of Review v. Tickle, supra; Baltimore Typographical Union No. 12, Truck Drivers & Helpers Union No. 355 et al. v. Hearst Corp., supra; Basso v. News Syndicate Co., Inc., supra; Mancini v. Administrator, Unemployment Compensation Act, supra; Lanyon v. Administrator, Unemployment Compensation Act,* 139 Conn. 20, 89 A.2d 558 (1952); *Urbach v. Unemployment Compensation Board of Review,* 169 Pa.Super. 569, 83 A.2d 392 (1951).

The fact that claimant's unemployment was fully voluntary and a direct result of a labor dispute is enough, in and of itself, to warrant a reversal in the instant case. However, we hasten to add that the Board obviously misinterpreted petitioner's action with regard to claimant's failure to return to work on April 12, 1976, as an involuntary termination.

In the letter sent to claimant by his supervisor, no mention was made of a termination. The letter did, however, inform the claimant that if he did not return to work by April 12, 1976, the Washington Post Company "shall take steps to replace you." In a subsequent letter to claimant, the supervisor explained:

> We told you, in writing, that if you did not return by a certain date, you would be permanently replaced . . . .

An employer, when faced with an economic strike, may permanently replace economic strikers. *NLRB v. Mackay Radio & Telegraph Co.,* 304 U.S. 333, 345–46, 58 S.Ct. 904, 82 L.Ed. 1381 (1938). However, a permanently replaced striker continues to be an employee within the meaning of the National Labor Relations Act,[4] and cannot be denied reinstatement absent substantial business justifications. *See The Laidlaw Corporation,* 171 N.L.R.B. 1366 (1968), *aff'd,* 414 F.2d 99 (7th Cir. 1969), *cert. denied,* 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970); *NLRB v. Fleetwood Trailer Co.,* 389 U.S. 375, 379, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967). An involuntarily terminated employee, on the other hand, enjoys no such rights.

We therefore determine that the Board's conclusions were not supported by substan-

---

3. We note that the question of whether claimant is entitled to unemployment compensation in the context of this case turns on whether his refusal to cross the picket line was voluntary or involuntary. That is, where the failure to cross the picket line stemmed from a reasonable fear of violence or threats to personal safety, the claimant would be eligible for unemployment compensation. *See Unemployment Compensation Bd. of Review v. Tickle, supra; Baltimore Typographical Union No. 12, Truck Drivers & Helpers Union No. 355 v. Hearst Corp., supra; Marczi v. Board of Review, Division of Employment Security, New Jersey Dep't of Labor and Indus., supra.*

4. 29 U.S.C.A. § 152(3) (1970), provides in pertinent part:

The term "employee" shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, *and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute* or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment . . . . [Emphasis added.]

tial evidence. The claimant was not involuntarily terminated but instead refused to return to work as a direct result of his participation in a labor dispute. Hence, we hold that he is disqualified from receiving unemployment compensation under D.C. Code 1973, § 46–310(f). *See also Washington Post Co. v. District Unemployment Compensation Board,* D.C.App., 377 A.2d 436 (1977). Accordingly, the decision of the Board is hereby

*Reversed.*