Conroy Unemployment Compensation Case.
Schmuck Unemployment Compensation Case.
Radio Corporation of America, Appellant, *v.*
Unemployment Compensation Board
of Review.

Argued March 10, 1969. Before WRIGHT, P. J., WAT-
KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and
CERCONE, JJ.

*S. R. Zimmerman, III,* with him *Zimmerman, Zim-
merman, Myers & Gibbel,* for employer.

*Jerome H. Gerber,* with him *Handler, Gerber and
Widmer,* for claimant, appellee, Schmuck, and for
claimant, appellant, Conroy.

*Sydney Reuben,* Assistant Attorney General, for
Unemployment Compensation Board of Review, appel-
lee.

OPINION BY MONTGOMERY, J., September 11, 1969:

These are appeals from the decisions and orders of
the Pennsylvania Unemployment Compensation Board
of Review, which granted benefits under the Pennsyl-
vania Unemployment Compensation Law to Harold S.
Schmuck, whose claim was filed in his own behalf and
as the representative of eleven other employes, and
which denied benefits to John Leo Conroy, whose claim

was filed in his own behalf and as the representative of approximately 210 fellow employes similarly situated. The Bureau of Employment Security had ruled all claimants to be ineligible under Section 402(d) of the Unemployment Compensation Act, Act of December 5, 1936, Second Ex. Session, P. L. (1937) 2897, art. IV, §402(d), as amended, 43 P.S. §802; but after hearing both cases together, the referee affirmed the Bureau in the Conroy case and reversed the Bureau in the Schmuck case. The Board affirmed the referee in both cases. These appeals followed: one by Conroy, in which Radio Corporation of America (RCA) joined as intervening appellee, and the other by RCA, in the Schmuck case, in which Schmuck intervened as an appellee.

These claims arose when the International Brotherhood of Electrical Workers, Local No. 1666 (IBEW), with approximately 3,950 members, struck the Lancaster, Pennsylvania, plant of RCA from June 4, 1967, through July 6, 1967. The IBEW agreement with RCA ended at midnight on June 1, 1967; and after the RCA and IBEW were unable to come to an agreement on a new contract, IBEW stopped working and established picket lines at the Lancaster plant, commencing at approximately 10:30 p.m. on June 4, 1967, and ending on July 6, 1967. Harold S. Schmuck was employed by RCA as a member of the Teamsters' Union, which had a collective bargaining agreement in effect with RCA during the strike. John Leo Conroy was a member of the International Association of Machinists, Local No. 1984 (IAM), which also had a collective bargaining agreement with RCA in force during the strike. Neither Schmuck nor Conroy was on strike.

In the Schmuck case, the Board found that there was work available for him and his fellow claimants, that he was willing to continue working, but that he was prevented from working because management ad-

vised him not to appear for work since it did not want anyone hurt or any damage done to equipment. For that reason he was directed not to try to enter the plant. These findings are supported by substantial competent testimony and are therefore binding upon us. *Byerly Unemployment Compensation Case,* 171 Pa. Superior Ct. 303, 90 A. 2d 322 (1952),

In the Conroy case the Board found, inter alia, that during the strike there was work available for him and his fellow claimants, that there was a work stoppage at the plant commencing June 4, 1967, at 10:30 p.m., that three members of Conroy's union were serving on IBEW's picket line on June 5, 1967, at 11:30 p.m., and that Conroy during the strike made no sincere effort to cross the picket line, which was peaceful and without evidence of violence. From these facts the Board drew the legal conclusion that Conroy's ". . . unemployment was actually voluntary on his part and the result of the work stoppage within the meaning of . . . Section 402(d) of the Law," and denied compensation under Section 402(d), which reads: "Section 402. An employe shall be ineligible for compensation for any week . . . (d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed: Provided, That this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage oc-

curs, any of whom are participating in, or directly interested in, the dispute."

Since in both cases the Board found that work was available for all claimants during the strike, Section 402(d) of the Act is inapplicable under the facts. In Pennsylvania "work stoppage" in this section means plant stoppage and not the individual employe's work. *Pulver Unemployment Compensation Case*, 207 Pa. Superior Ct. 112, 215 A. 2d 269 (1965).

Under the facts of these cases the applicable provision of the Act is Section 402(b), which reads, "An employe shall be ineligible for compensation for any week . . . (b)(1) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature . . . And provided further, That the provisions of this subsection shall not apply in the event of a stoppage of work which exists because of a labor dispute within the meaning of subsection (d)." In the Schmuck case, the Board acknowledged this to be true when it stated in its opinion, "There are two other questions that arise in this case, to wit: (1) Was continued employment available to the claimant during the work stoppage? (2) Was claimant's unemployment, during the work stoppage, in fact due to lack of work brought about by the employer's failure to call the claimant to work because of the employer's concern for the safety of the claimant and its equipment?" Both questions were answered in the affirmative by the Board.

By such findings the Board recognized that there was risk of harm to nonstriking employes if they attempted to cross the picket line, which is inconsistent with its other finding that the picketing was peaceful and without violence. A further inconsistency arises when it refused to recognize that there was a risk of bodily harm to Conroy and his associates if they at-

tempted to cross the picket line. The same picket line was involved, work was available for Conroy, but the Board denied him compensation because of its finding that he refused to cross that line. In spite of the peaceful picketing, the Board found for Schmuck because it found that Schmuck and his associates were ordered not to cross the line for *safety reasons*. However, in both cases the Board made similar findings regarding the passes for various employes that RCA and IBEW negotiated. In the Conroy case, the finding reads, "17. During the work stoppage approximately 1750 non-union employes (450 supervisory, 950 non-supervisory and 375 engineers) were permitted to cross the picket lines by virtue of negotiated agreement between the company and the I.B.E.W." Such a finding would support the position of Conroy and his associates[1] that they did not report for work because they feared bodily harm. There was a real risk of violence and genuine fear on the part of management if it took the precaution of negotiating with IBEW for passes for 1,750 employes to cross the picket line. The evidence supports the fact that RCA did not take those necessary steps to gain the admittance to the plant of the Conroy group so that they could do the work that was available to them.

In *Outboard, Marine & Manufacturing Company, Johnson Motors Division v. Gordon,* 403 Ill. 523, 87 N.E. 2d 610 (1949), compensation was allowed to office workers who refused to cross picket lines during a strike, where no passes were issued to them to pass through the picket line, and where all the doors to the plant were locked. There it was held that it was not any act or omission of the employe but the omission

---

[1] If three of Conroy's associates personally participated in the picket line, this should not affect the rights of all members of the same union if no union action sanctioned their participation.

of the company that prevented the employes from working. In that case, the company locked its doors; however, in the present case, although RCA did not lock the plant doors, it kept Schmuck out and prevented him from working as effectively as if it had locked its doors by directing him not to try to enter the plant.

Therefore, the issue in the Conroy case is the same as that in the Schmuck case. It is whether these claimants voluntarily left their work without cause of a necessitous and compelling nature under Section 402(b) (1) of the Unemployment Compensation Law. We have held that if a picket line is maintained within the limits permitted by law and there is no physical compulsion exerted to prevent employes from passing the picket line, nonstrikers are unemployed solely by their own choice. *Franke Unemployment Compensation Case,* 166 Pa. Superior Ct. 251, 70 A. 2d 461 (1950). However, we have also recognized the right of an employe to refuse to cross a picket line when there is present a reasonable fear of danger from doing so. *Urbach Unemployment Compensation Case,* 169 Pa. Superior Ct. 569, 83 A. 2d 392 (1951). But in *Franke Unemployment Compensation Case,* supra, at page 257, this Court also stated, "If an employe is prevented from working through no act of his own, as where he is forcibly barred from working, he would be entitled to compensation."

Where the decision of the Board is against the party having the burden of proof, the question before the appellate court is whether the Board's findings of fact are consistent with each other and with its conclusions of law and its order, and can be sustained without a capricious disregard of the competent evidence. *Johnson Unemployment Compensation Case,* 201 Pa. Superior Ct. 488, 193 A. 2d 615 (1963). Since we find in the Conroy case that the Board's findings

of fact are inconsistent with each other as well as with the conclusions of law, we remand it to the Board for further proceedings.

Decision and order affirmed in Radio Corporation of America v. Unemployment Compensation Board of Review, No. 389 October Term, 1968.

Decision and order reversed in John Leo Conroy v. Unemployment Compensation Board of Review, No. 2 March Term, 1969, and remanded for proceedings not inconsistent with this opinion.

---

OPINION BY WRIGHT, P. J., CONCURRING IN PART AND DISSENTING IN PART:

I agree that the decision of the Board of Review should be affirmed in the Schmuck case because the employer advised Schmuck and his fellow claimants, members of Local 771 I.B.T., that they should not attempt to enter the plant. I would also affirm the decision of the Board of Review in the Conroy case because members of the union to which he and his fellow claimants belonged, Local No. 1984 I.A.M., were actively participating in the strike.

WATKINS, J., joins in this concurring and dissenting opinion.