Opinion by
Judge Kramer,
This opinion involves 14 separate appeals filed by the appellants (claimants) named in the caption above from an order of the Unemployment Compensation Board of *556 Review (Board), dated May 31, 1974, affirming its referee’s decision denying unemployment compensation benefits to all 14 claimants.
Prior to June 29, 1973, the claimants were employed as garagemen and mechanics by the Schwerman Trucking Company (Schwerman) at two of its Pittsburgh truck terminals. Seven of the claimants (Robert A, Tickle, Joseph B. Matlack, Newman, Mohney, Matze, Shamberger and Johnson) were members of the Automotive Chauffeurs, Parts and Garage Employees, Local 926, and the other seven claimants (Lyman A. Tickle, Theodore A. Matlack, Thompson, Lapusnak, Smith and Shondelmyer) were members of Machinists Union, Local 1060. On Friday, June 29, 1973, the drivers of Schwerman at these two terminals, who were members of a separate union, viz. Teamsters Local 249, went on strike and picket lines were established at both terminals. All of the claimants were of a different grade or class of worker than the drivers who were involved in the strike.
From the record it would appear that all of the claimants reported for work at their next regularly scheduled starting times following the establishment of the picket lines. Upon their arrival at the terminals for work, they were confronted by pickets, some of whom had been drinking and had become rowdy and boisterous. Some of the pickets made brandishing steel balls and steel hammers. The strikers made numerous explicit threats of bodily harm to the claimants as they appeared at the terminals for the purpose of commencing their work. Two of the claimants were physically “grabbed” by the pickets and taken into a shed established on the picket line. While in the shed one of these men was told that if he didn’t “keep the hell out,” the pickets would “kick the shit” out of him. The other individual who was pulled into the shed was told that it he performed any work for Schwerman the pickets would “get” him “sooner or later.” Numerous anonymous threatening *557 telephone calls were made to some of the claimants, and to some of their wives. Some of the claimants were told by strikers that if they crossed the picket line, their automobiles would be damaged. One of the claimants was told that if he crossed the picket line, he should take his suitcase with him because he would not be permitted to exit. Another claimant was threatened by the strikers with a broken arm if he crossed the picket line. The record firmly establishes that, during this same period of time, the same Teamsters Local 249 had been accused of actual violence, such as the throwing of steel balls through the windshields of moving trucks and the forcing of other trucks off the road. In at least one such case a truck driver was injured. This violence, off the premises of the terminals here in question, was reported by local newspapers, radio and television.
Alleging that these incidents caused them to fear violence and bodily harm, none of the claimants crossed the picket line for work, although apparently several of them were permitted to cross the picket line for the purpose of receiving their back pay. All 14 claimants filed claims for unemployment compensation benefits. All were denied benefits by the Bureau of Employment Security. All 14 filed timely appeals, which were consolidated for hearing. The referee affirmed the Bureau’s decision and likewise denied benefits. Upon appeal to the Board, the matter was remanded for further testimony. At the second hearing the only evidence offered was to the effect that even if the claimants had been able to cross the picket lines there would have been, at the most, one week’s work available for them, after which they would have been laid off. After this second hearing, the Board handed down its adjudication affirming the referee’s decision denying benefits on the basis that the claimants did not meet the provisions of section 402(d) of the Unemployment Compensation Law (Act), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(d). Section 402(d) of the Act reads as follows;
*558 “An employe shall be ineligible for compensation for any week—
“(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed; Provided, That this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute.”
In his decision the referee made the following finding of fact:
“Although there is evidence of violence on the record by drivers of Local 249, there was no violence by the pickets at the claimant’s place of employment and the claimant did refuse to cross the picket lines.”
The referee thereby concluded that the claimants “chose to honor the union’s picket line and remained away from work.”
As we have said so many times, our scope of review in unemployment compensation cases is confined to questions of law and, absent fraud, to a determination as to whether the Board’s findings (in this case the referee’s findings adopted by the Board) are supported by the evidence. Questions of credibility and the weight to be given evidence are for the Board. Shira v. Unemployment Compensation Board of Review, 10 Pa. Commonwealth Ct. 457, 310 A.2d 708 (1973).
*559 The claimants raise two issues in their appeal to this Court. First the claimants contend that the referee’s finding of “no violence by the pickets at the claimant’s place of employment” is not supported in the record, and that the record, in fact, shows that the threats of violence and show of force by the pickets caused the claimants to have a reasonable fear of violence which led them to decide not to cross the picket lines. Secondly, the claimants contend that the Board erred by not granting benefits for at least the last 12 weeks of the 13 week strike. This contention is based upon uncontroverted testimony in the record indicating that a maximum of one week of work was available to claimants after the start of the strike and claimants’ reasoning that, therefore, for the last 12 weeks of the strike their unemployment had to be involuntary.
The Board contends that this case is controlled by McGann Unemployment Compensation Case, 163 Pa. Superior Ct. 379, 62 A.2d 87 (1948). According to the Board the McGann case requires that the claimants, in order to avoid being ineligible for benefits under section 402(d) of the Act, must show that they failed to cross the picket line because of a reasonable fear of violence induced by (a) threats of physical violence by the pickets, and (2) actual incidents of violence on the picket line. The Board argues that the claimants have failed to show actual violence on the picket line.
Before we consider the merits of the instant case, we believe it is necessary to discuss the questions of when section 402(d) of the Act should be applied, and how section 402(d) of the Act relates to section 402(b)(1) of the Act, 43 P.S. §802(b)(1). We believe that this is necessary because our reading of the briefs in this case leads us to conclude that there is some confusion concerning the question of how and when section 402(d) of the Act should be applied, and how it relates to section 402(b)(1). Section 402(b)(1) of the Act, 43 P.S. §802 (b)(1) reads, in pertinent part, as follows:
*560 “An employe shall be ineligible for compensation for any week—
“(b)(1) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature . . . provided . . . That the provisions of this subsection shall not apply in the event of a stoppage of work which exists because of a labor dispute within the meaning of subsection (d) [section 402(d) quoted above].” (Emphasis added.)
Depending upon how the language “stoppage of work which exists because of a labor dispute” is interpreted, either section 402 (b)(1) or section 402(d) can be applied to the instant case. One possibility is that “stoppage of work which exists because of a labor dispute” means stoppage by the employer, which would mean that, in the event of a strike, section 402(d) would apply to individuals whose jobs are not available to them because of the strike, but section 402(b)(1) would apply to individuals whose jobs are available, but who fail, for some reason, to go to work. Another possible interpretation of “stoppage of work . . . because of a labor dispute” is that it means a stoppage of work by the claimant-employe because of a labor dispute. Under this interpretation section 402(b) (1) would never be applicable to unemployment due to a labor dispute, and section 4.02(d) would always be applicable, irrespective of whether or not work was actually available to the claimant.
Both of these interpretations are plausible and a review of the case law in this area shows that both interpretations have been applied. Apparently the Superior Court originally believed that stoppage of work should be interpreted to mean cessation of work by the employer. See Melchick Unemployment Compensation Case, 185 Pa. Superior Ct. 303, 138 A.2d 210 (1958), rev’d. 396 Pa. 560, 154 A.2d 875 (1959); Harris Unemployment Compensation Case, 185 Pa. Superior Ct. 235, 138 A.2d 207 *561 (1958). In Melchick, supra, however, the Supreme Court reversed the Superior Court and specifically stated that stoppage of work in section 402 (b)(1) of the Act means cessation of work by the employe. The Supreme Court also stated, however, that it was only considering the meaning of “stoppage of work” in section 402(b)(1) and that, if it was faced with the question of the meaning of “stoppage” of work in section 402(d), it might have reached a “different conclusion.” The Superior Court chose to treat the Supreme Court’s statements in Melchick, supra, as dicta, and, therefore, the Superior Court continued to interpret “stoppage of work” in both sections 402(d) and 402(b)(1) to mean a “plant stoppage.” See Mattson Unemployment Compensation Case, 194 Pa. Superior Ct. 307, 167 A.2d 321 (1961). The more recent Superior Court cases dealing with section 402(d) interpret “stoppage of work” to mean “plant stoppage.” See Conroy Unemloyment Compensation Case, 215 Pa. Superior Ct. 83, 257 A.2d 65 (1969); Pulver Unemployment Compensation Case, 207 Pa. Superior Ct. 112, 215 A.2d 269 (1965). Thus our review of the case law in this area shows that the Supreme Court has quite expressly stated that stoppage of work in section 402(b)(1) of the Act means stoppage by the employe, and that the Superior Court has consistently held that stoppage of work in both 402(d) and 402(b)(1) means a stoppage by the employer.
We strongly agree with the statement by the Superior Court in Mattson, supra, that “stoppage of work” should be interpreted uniformly within section 402 of the Act. We believe that it would be both absurd and unreasonable to conclude that the Legislature intended the exact same phrase to have two distinct meanings in the same section of a statute. See 1 Pa. C.S. 1922(1). We believe, however, that the Supreme Court’s definition of work stoppage in Melchick, supra, is preferable to the Superior Court’s definition. We are required to construe statutory *562 language according to its common and approved usage. The most common and approved usage of the noun “work” is in reference to activity by an individual.[1] Therefore, we believe it is necessary to interpret “stoppage of work . . . because of a labor dispute” to mean stoppage of work by an individual due to a labor dispute. We believe that the intent of the Legislature in the proviso to section 402(b)(1) was to make section 402(b) inapplicable to unemployment due to labor disputes, irrespective of whether or not continuing work is available to the claimant. Similarly, we believe section 402(d) was intended to apply to unemployment due to labor disputes (other than lockouts), irrespective of whether or not continuing work is available. Thus we specifically hold that the phrase, “stoppage of work which exists because of a labor dispute,” as used in section 402 of the Act, means any cessation of work by an employe due to a labor dispute, irrespective of whether or not continuing work is available. Under this definition of stoppage of work, section 402(d) would apply to any individual who (1) has gone on strike; (2) has ceased work because his job is no longer available to him due to a labor dispute at his place of employment; or (3) has ceased work during such a labor dispute, for either voluntary or involuntary reasons, even though work is still available. Therefore, in the instant case, section 402(d) was applicable to the claimants even though work was available to them during the first week of the strike.
Having decided that section 402(d) of the Act is applicable to the instant case, we must now consider how it should be applied. We believe section 402(d) is clear on its face. All persons who are unemployed due to labor disputes are declared ineligible for benefits unless they *563 can show that they meet the three conditions set forth in the proviso to section 402(d). Thus, in order to avoid being disqualified by section 402 (d) of the Act, the claimants in the instant case had the burden of proving (1) that they did not participate in or become directly interested in the labor dispute; (2) that they were not members of an organization which participated in, or was directly interested in, the labor dispute; and (3) that they did not belong to the same grade or class of workers which participated in, or was directly interested in, the labor dispute. See Oluschak Unemployment Compensation Case, 192 Pa. Superior Ct. 255, 159 A.2d 750 (1960); Oliver Unemployment Compensation Case, 189 Pa. Superior Ct. 362, 150 A.2d 361 (1959).
Our reading of the record in this case makes it clear that the claimants succeeded in showing that they meet the last two conditions set forth in the proviso to- section 402(d) of the Act. It is clear that claimants were not members of the striking union and that they were not in the same grade or class of workers as the strikers.[2] Therefore, the sole issue remaining in this case is the question of whether the claimants sustained their burden of showing that they meet the first condition set forth in the proviso to section 402(d)-, i.é. that they did not participate in or become directly interested in the strike. If the claimants voluntarily chose to honor a peaceful picket line, then they participated in and became directly interested in the strike, and are not eligible for benefits under section 402 (d). If, on the other hand, a reasonable fear of violence caused the claimants not to- cross the picket line, then they did not participate in or become *564 directly interested in the strike, and they are eligible for benefits.
The Board argues that McGann, supra, is controlling and that, in order to sustain their burden of proof under McGann, the claimants had to show reasonable fear of violence induced by threats of violence and actual violence on the picket line. As we noted above, the Board contends the claimants are ineligible for benefits because they failed to show actual violence on the picket line. We disagree for several reasons. First of all, we cannot agree that McGann is controlling because it dealt with section 402(d) as it existed prior to 1947,[3] Secondly, we cannot agree with the Board’s position that the claimants had to show actual violence on the picket line in order to sustain their burden of proof. And lastly, even if the Board’s legal argument was valid, we do not agree that the claimants failed to show actual violence because uncontroverted testimony in the record shows that two of the claimants were “grabbed” and taken into a shed near the picket line.
The Board argues that we must require proof of actual violence at the place of employment in cases such as this, or else we leave open the possibility of collaboration between strikers and nonstrikers, and thus make the Board’s task and our own task in deciding such cases more difficult. In effect, the Board would require that claimants, in a case such as this, offer themselves or send forth a representative (a sort of sacrificial lamb) to test the authenticity of the threats and show of force by the pickets. Such a requirement might make these cases easier to decide, but we do not believe it is proper to *565 subject unemployment compensation claimants to burdensome and dangerous requirements in order to make cases easier to decide. The issue in cases such as this is whether the refusal to cross the picket line was voluntary or involuntary. We do not believe that a claimant must show actual violence on the picket line in order to prove that his refusal to cross was involuntary. We believe that a showing of threats of violence together with a show of force on the picket line, sufficient to induce a reasonable fear of violence, is enough to prove that the failure to cross was involuntary. Our reading of the case law dealing with refusals to cross picket lines (including cases dealing with the prior section 402(d) lends support to our interpretation of the law. See Glass Industry Machine Workers Unemployment Compensation Cases, 7 Pa. Commonwealth Ct. 385, 298 A.2d 700 (1973); Urbach Unemployment Compensation Case, 169 Pa. Superior Ct. 569, 83 A.2d 392 (1951); Franke Unemployment Compensation Case, 166 Pa. Superior Ct. 251, 70 A.2d 461 (1950); McGann, supra; and Phillips Unemployment Compensation Case, 163 Pa. Superior Ct. 374, 62 A.2d 84 (1948).
Applying the law to the facts of the instant case we must conclude that the claimants succeeded in sustaining their burden of proof. The record in this case clearly shows (1) that the pickets were intoxicated; (2) that they were armed with steel balls and hammers; (3) that they were making specific threats directed to the claimants; and (4) that they actually grabbed two members of the claimants’ class in order to dissuade them from going to work. We are forced to conclude that the actions of the pickets were sufficient to instill in a reasonable person a genuine fear for his personal safety. While not controlling, we believe that the well publicized and rather severe acts of violence by strikers away from the picket lines help to corroborate the claimants’ testimony that they feared for their personal safety.
*566 The claimants in this case argue that even if they had voluntarily failed to cross the picket lines during the first week of the strike, they would still deserve benefits for the last 12 weeks when no work was available. We need not pass on this issue because of our holding, set forth above, but we note that participation or direct interest in the strike at its outset, through failure to cross a peaceful picket line, would be sufficient to make an individual ineligible for benefits for the duration of the strike, even if at some period during the strike his job ceased to be available to him. See Alloway Unemployment Compensation Case, 208 Pa. Superior Ct. 451, 222 A.2d 449 (1966).
In summary, we have concluded that claimants were unemployed due to a stoppage of work which existed because of a labor dispute and that, therefore, section 402 (d) of the Act was applicable. We hold, however, that the claimants succeeded in carrying their burden of proving that they meet all three of the conditions set forth in the proviso to section 402(d) of the Act, and that, therefore, the Board erred in denying benefits. In accordance with the above, we therefore
Order
And Now, this 9th day of June, 1975, the order of the Unemployment Compensation Board of Review, dated May 31, 1974, denying benefits to Robert A. Tickle, David A. Newman, Paul A. Mohney, Ambrose G. Matze, Robert G. Shamberger, Jr., Roy Johnson, Joseph B. Matlack, James F. Byrne, Ralph C. Thompson, Albert A. Lapusnak, Donald F. Smith, Theodore A. Matlack, William R. Shondelmyer and Lyman A. Tickle, is hereby reversed.
President Judge BOWMAN concurs in the result only.

. Webster’s Seventh New Collegiate Dictionary contains the following primary definition for the noun “work”: “1: Activity in which one exerts strength or faculties to do or perform something. . . .”

. This case does not involve a “continuous integrated production process” such as was involved in Unemployment Compensation Board of Review v. National Valve and Manufacturing Co., 19 Pa. Commonwealth Ct. 565, 339 A.2d 137 (1975). It is obvious that the garagemen and mechanics are a different grade and class of worker than the truck drivers who were on strike.

. Prior to the 1947 amendment the first part of subsection (d) to section 402 of the Act read as follows:
“In which his unemployment is due to a voluntary suspension of work resulting from, an industrial dispute at the factory, establishment or other premises at which he is or was last employed.” (Emphasis added.)