Westinghouse Electric Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Robert J. Jeffrey et al., Respondents.

Argued March 1, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt and DiSalle.

*R. F. Marsh, III*, with him *Joseph M. Loughren, Alan K. Berk*, and *Costello & Berk*, for petitioner.

*Charles G. Hasson*, Assistant Attorney General, with him *Robert P. Kane*, Attorney General, for respondent.

Opinion by Judge Blatt, May 1, 1978:

Westinghouse Electric Corporation (Westinghouse) appeals here from an order of the Unemployment Compensation Board of Review affirming the grant of unemployment benefits to several of its employees.

The employees, production workers at the Westinghouse plant in Blairsville, are members of Local 1096 of the International Brotherhood of Electrical Workers. On July 21, 1975, a labor dispute developed between Westinghouse and the Association of Westinghouse Salaried Employees. On that date and subsequent thereto, mass picketing was instituted, and management, professional and other employees were

not permitted to enter the Blairsville plant. Upon filing an application for benefits under the Unemployment Compensation Law[1] (Act) for the week ending July 26, 1975, these employees were ruled ineligible for benefits by the Bureau of Employment Security pursuant to Section 402(d) of the Act, 43 P.S. §802 (d), which relates to the award of benefits when there has been a work stoppage caused by a labor dispute.

Upon appeal, the referee held two hearings and then reversed the Bureau, granting benefits. He concluded that the employees were restrained from crossing the picket line because of a reasonable fear of violence. Westinghouse appealed to the Board, which affirmed the referee, and Westinghouse now appeals the Board's decision here, arguing that the employees should be denied benefits because the referee and the Board failed to make a specific finding that the fear of the employees for their personal safety was reasonable. It argues further that the evidence does not support the conclusion that the employees were restrained from crossing a picket line because of a reasonable fear of violence, and that they offered no evidence of a reasonable attempt to cross the picket line and no evidence of violence, so that the employees should as a matter of law not be entitled to benefits under Section 402(d) of the Act. This section provides:

An employe shall be ineligible for compensation for any week—

. . . .

(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed: Provided, That

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §751 et seq.

this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute.

43 P.S. §802(d).

It is undisputed that the employees here were never and are not presently members of the union involved in the labor dispute which caused the work stoppage. Thus, the only issue is whether or not they were participating in, or directly interested in the labor dispute which caused the work stoppage. Or, in other words, was the work stoppage in the case of these employees caused by their voluntarily choosing to honor the other union's picket line.

The referee's findings were that :(1) "[o]n July 21, 1975, the mass picketing showed sufficient strength that neither management, professional workers or hourly employees were permitted to enter the plant," (2) "[o]n July 22, 1975, the employer sought an injunction against the picketing, however, this was not pursued when an agreement was entered into that should have permitted entry into the plant," (3) "[m]anagement personnel and professional workers were thereafter permitted to enter the plant, however, on occasion with some difficulty," (4) "[e]arly during the work stoppage a truck delivering hydrogen was stopped and company trucks were kept from leaving the plant," (5) "[m]any of the pickets wore hard hats

and carried clubs," (6) "[o]n one occasion the windshield of one of the claimants was broken and one had a club swung in the direction of his head," and (7) "[m]embers of Local 1096 were told they would not be permitted to cross the picket line because there would be violence."

In the light of these findings, we believe that the referee properly concluded that these employees were restrained from crossing the picket lines because of a reasonable fear of violence and that this reasonable fear of violence made their failure to cross the picket line in effect involuntary. In a very similar case, *Unemployment Compensation Board of Review v. Tickle,* 19 Pa. Commonwealth Ct. 550, 563, 339 A.2d 864, 871 (1975), this Court has previously held that a claimant need not show actual violence on the picket line in order to prove that his refusal to cross was involuntary under Section 402(d) of the Act, where we said that a "showing of threats of violence together with a show of force on the picket line, sufficient to induce a reasonable fear of violence, is enough to prove that the failure to cross was involuntary." Here, the referee's findings indicate that there were not only threats of violence but also several actual incidents of violence during the strike, as well as a show of force on the picket line, and the testimony offered at the referee's hearings substantiates these findings. As a matter of law, therefore, these employees are entitled to unemployment compensation benefits.

We affirm the order of the Board.

President Judge BOWMAN dissents.

ORDER

AND Now, this 1st day of May, 1978, the Order of the Unemployment Compensation Board of Review, No. B-138610, dated December 21, 1976 on the above-captioned matter, is hereby affirmed.