United Parcel Service, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 5, 1981, before Judges Mencer, MacPhail and Palladino, sitting as a panel of three.

Ralph G. Wellington, with him Bernard G. Segal, Schnader, Harrison, Segal & Lewis, for petitioner.

William J. Kennedy, Assistant Attorney General, with him Richard Wagner, Chief Counsel, and LeRoy S. Zimmerman, Attorney General, for respondent.

OPINION BY JUDGE MENCER, June 3, 1981:

United Parcel Service, Inc. (UPS) has appealed from an order of the Unemployment Compensation Board of Review (Board) granting benefits to James M. Foltz and 55 similarly situated UPS employees (claimants).

The claimants were employees of UPS at various locations in western Pennsylvania who belonged to the International Association of Machinists. On September 15, 1976, the International Brotherhood of Teamsters (Teamsters) initiated a work stoppage at the UPS facilities. The Board, after weighing the testimony of the claimants and UPS representatives, issued the following findings of fact concerning the events of the strike:

8. On September 15, 1976, the employer sent the claimant and other members of Lodge 1060 home early from work due to a fear for their safety based on violence which had oc-

curred during a previous teamster's union work stoppage.

9. On September 21, 1976, the employer notified the claimant [and] some of the other employees that they should report for work.

10. At various job sites the members of the Teamsters Union blocked the ingress and egress of employees and other persons as well as company vehicles.

11. The claimant and other members of Lodge 1060 did not cross the picket line because they were specifically threatened with violence to their persons and motor vehicles. In the case of at least one member of Lodge 1060, one picket asked another where the keys to a shotgun were.

12. Pickets at various employment sites were drinking alcohol, windows were broken at some site [sic].

13. Beer cans were thrown at the claimant and other members of Lodge 1060.

14. Subsequent to September 22, 1976, the claimant and other members of Lodge 1060 made repeated attempts to report for work but did not cross the picket line because they were met with similar threats of violence.

15. The claimant and other members of Lodge 1060 did not cross the picket lines because they feared for their safety.

The applicable provision of the Unemployment Compensation Law[1] is Section 402(d), 43 P.S. §802 (d), which provides that an employee will remain eligible for benefits during a stoppage of work due to a labor dispute, if it is shown that the employee is not

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §751 et seq.

participating in, or directly interested in, the labor dispute.

We must determine whether the Board's findings support the legal conclusion that claimants were justified in refusing to cross the picket line because of a reasonable fear of violence and therefore were not "participating" in the labor dispute. We believe that the findings do support this conclusion, based on our holding in *Unemployment Compensation Board of Review v. Tickle,* 19 Pa. Commonwealth Ct. 550, 563, 339 A.2d 864, 870-71 (1975), where we stated that threats do not have to be accompanied by actual violence in order to justify an employee's refusal to cross the picket line. *Tickle,* and the cases decided under its holding, indicate that the question of what constitutes a reasonable fear of violence ultimately becomes a matter of degree. Where the confrontations on the picket line surpass harsh persuasion and become intimidation, a claimant is not required to test the threats in order to avoid disqualification for benefits. *See Wright v. Unemployment Compensation Board of Review,* 45 Pa. Commonwealth Ct. 375, 405 A.2d 991 (1979). Hence, in *Lakeview Forge Co. v. Unemployment Compensation Board of Review,* 36 Pa. Commonwealth Ct. 204, 387 A.2d 984 (1978), we allowed benefits where striking workers had threatened personal injury and had broken plant windows, slashed tires, and harassed all persons seeking to enter or leave the plant. Similarly, in *Westinghouse Electric Corp. v. Unemployment Compensation Board of Review,* 35 Pa. Commonwealth Ct. 150, 384 A.2d 1372 (1978), we allowed benefits where pickets had threatened injury, broken a windshield, and swung a club in the direction of a claimant's head.

We reiterate that, here, the Board found that the pickets (1) were intoxicated, (2) blocked ingress and egress of employees, (3) made threats of serious per-

sonal injury, and (4) broke plant windows. Based upon these facts, we are satisfied that claimants had reasonable grounds for fearing violence.

Relying upon *Unemployment Compensation Board of Review v. G. C. Murphy Co.,* 19 Pa. Commonwealth Ct. 572, 339 A.2d 167 (1975), UPS argues that claimants lacked reasonable grounds for refusing to cross the picket line. *Murphy,* however, can be distinguished on its facts from the instant case. In *Murphy,* we found that one incident of violence involving 125 pickets was insufficient to justify a continued refusal to cross otherwise peaceful picket lines.

UPS further contends that the Board lacks substantial evidence to support its ninth finding of fact, which states that only some employees were notified that they should return to work on September 21, 1976. We disagree. Our reading of the record indicates that only 11 of the 56 claimants testified that they were notified by UPS to return to work, and at least one claimant testified that he was never notified. To establish that the remaining 44 claimants were notified, UPS relies upon the testimony of several employer representatives, who stated that they notified certain claimants by telephone. The testimony of the employer representatives, however, does not prove that all claimants were contacted. A careful review of the testimony indicates that, while the employer representatives attempted to call back all of the claimants, some concededly may have been missed. Therefore, we cannot agree with UPS that the Board erred in finding that only some employees were notified to return to work.

Accordingly, we enter the following

ORDER

AND Now, this 3rd day of June, 1981, the order of the Unemployment Compensation Board of Review,

dated April 4, 1980, granting benefits to James M. Foltz et al., and being related to Decision No. B-160931-D, is affirmed.

Judge WILKINSON, JR. did not participate in the decision in this case.