**STONE CONTAINER CORPORATION,**
Petitioner,

v.

**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 1995.

Decided April 17, 1995.

Michael J. Ossip, for petitioner.

Judith M. Gilroy, Asst. Counsel, for respondent.

Charles T. Joyce, for intervenor Kenneth Devlin.

Before COLINS, President Judge, and FRIEDMAN, J., KELTON, Senior Judge.

FRIEDMAN, Judge.

Stone Container Corporation (Employer) appeals from an order of the Unemployment Compensation Board of Review (Board) which reversed a referee's decision and granted benefits to Kenneth B. Devlin (Claimant). We affirm.

On August 8, 1993, the International Brotherhood of Teamsters, Local Union 470 (Local 470), initiated a work stoppage at Employer's work sites and established and maintained picket lines. None of Employer's employees belonged to Local 470; however, Employer did subcontract with a trucking firm with which the Teamsters were having a labor dispute. Several incidents occurred. At Employer's West Plant, employees belonging to United Paperworkers International Union Local 375 (Local 375) were accosted by pickets who threw rocks and stones at the employees as they left the plant at the end of their shift. At Employer's East Plant, pickets threatened to find anyone who crossed the line, follow them home and kick their asses.

On the third day of the strike, Employer obtained a court injunction limiting the number of pickets allowed at the delivery and plant employees' entrances and barring pickets from the office entrance. After this measure was taken, an average of four or five pickets were at each of the other entrances at any one time. Still, problems continued. One of the Local 375 members, who reported for work through the office entrance, left his car parked outside the facility and returned after work to find his car vandalized, the tires slashed and the windows shattered. Employer hired security guards to maintain order. However, when the guards were driving through the picket lines, pickets would sometimes shake their vehicles, bang on the windows and shout threats.

Although the majority of members of Local 375 came to work each day, they did not cross the picket line because they believed that they could not do so safely. (Board's Findings of Fact, Nos. 4, 7–16; Board's op. at 3.) Consequently, these members of Local 375 sought unemployment benefits, with Kenneth B. Devlin as the lead token employee representing the interests of all similarly situated employees. The job center denied benefits, and the referee affirmed, finding that Claimant did not have a real and substantial fear of injury, but rather had elected to honor the picket line; the referee concluded that Claimant had been participating in the labor dispute which caused the stoppage of work and, thus, was ineligible for benefits pursuant to section 402(d) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(d).[1]

The Board disagreed with the referee's analysis, concluding that because there was no labor dispute involving Claimant's Employer, section 402(d) of the Law is inapplicable. Thus, the Board determined that section 402(d) did not make Claimant ineligible for benefits and, pursuant to a request by Employer and the consent of both parties,[2]

---

1. Section 402(d) of the Law provides that an employee is ineligible for compensation for any week:

   (d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed: Provided, That *this subsection shall not apply if* it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute.
   43 P.S. § 802(d) (emphasis added).

2. Before the referee, Employer's lawyer said:

   We would ask in a case like that that the Referee consider Section 402(b) and the reason being because Stone Container had no control in this work stoppage whatsoever. The

analyzed the case under section 402(b) of the Law.[3] Applying section 402(b), the Board found that the Claimant believed he could not safely cross the picket lines[4] and held that Claimant's reasonable fear of violence constituted cause of a necessitous and compelling nature for his absence from work, making him eligible for benefits.

On appeal to this court,[5] Employer first argues that section 402(d) of the Law is applicable and that Claimant is ineligible for benefits because he was participating in the labor dispute which caused the stoppage of work. We agree that section 402(d) applies here, but we do not agree that Claimant is ineligible for benefits. Situations where claimants have ceased work during a labor dispute, for either voluntary or involuntary reasons, even though work is still available, are to be analyzed under section 402(d) of the Law, rather than under section 402(b) of the Law as the Board did here.[6] *Unemployment Compensation Board of Review v. Tickle*, 19 Pa.Commonwealth Ct. 550, 339 A.2d 864 (1975).

Basically, Employer contends that Claimant failed to prove that his refusal to cross the picket line was *involuntary* because it resulted from a reasonable fear of violence, rather than a *voluntary* choice to honor the other union's pickets. We disagree. In *Tickle*, we said:

The issue in cases such as this is whether the refusal to cross the picket line was voluntary or involuntary. We do not believe that a claimant must show actual violence on the picket line in order to prove that his refusal to cross was involuntary. We believe that *a showing of threats of violence together with a show of force on the picket line, sufficient to induce a reasonable fear of violence, is enough to prove that the failure to cross was involuntary.*[ ]

*Id.* at 563, 339 A.2d at 870–71 (emphasis added).[7]

---

union that was striking was a non-employee union and if the Referee goes to the effect of granting benefits under Section 402(d) the employer will be charged for these benefits. Their tax rate will be affected. ·If the Referee would consider that under Section 402(b) we believe the employer will be able to get relief from charges and in all honesty it's the best of both worlds if the Referee comes to that conclusion. The Claimant will be entitled to benefits because he was forbidden to cross the picket lines due to violence and the employer will be granted relief from charges because it's non work-related voluntary quit or voluntary stop reporting to work for the time period in question.
(R.R. at 9a–10a.) Claimant's lawyer had no objection, agreeing that violence and the threat of violence could translate into necessitous and compelling cause.

3. Section 402(b) of the Law, 43 P.S. § 802(b), provides that an employee shall be ineligible for benefits when his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature.

4. Although not labelled as such, this statement is actually a factual finding as to the Local 375 members' beliefs or reasons for not crossing the picket lines. Thus, we may treat it as a finding of fact. *Wells–Moore v. Workmen's Compensation Appeal Board (McNeil Consumer Products Co.)*, 144 Pa.Commonwealth Ct. 382, 601 A.2d 879 (1992).

5. Our scope of review on appeal is limited to determining whether constitutional rights were violated, the Board has committed an error of law or whether the Board's findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Lakeview Forge Co. v. Unemployment Compensation Board of Review*, 36 Pa.Commonwealth Ct. 204, 387 A.2d 984 (1978). Questions of credibility and of the weight to be applied to the evidence are for the Board. *Lakeview Forge.*

6. We note, however, that the inquiry is essentially the same in either case. Because this is a case of unemployment due to a labor dispute, analyzed under section 402(d) of the Law, the question here is whether the fear of violence is reasonable so as to make the failure to cross the picket line *involuntary;* if this were a voluntary quit case, analyzed under section 402(b) of the Law, the question would be whether the fear of violence was reasonable so as to be necessitous and compelling cause for terminating employment, transforming what would otherwise be a *voluntary* quit into *involuntary* unemployment. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977).

7. Citing to *Unemployment Compensation Board of Review v. G.C. Murphy Co.*, 19 Pa.Commonwealth Ct. 572, 339 A.2d 167 (1975), Employer argues that Claimant has not shown that his refusal to cross the picket line was due to a reasonable fear of injury. *G.C. Murphy* and *Tickle* were decided the same day by the same en

■ In *United Parcel Service v. Unemployment Compensation Board of Review,* 59 Pa.Commonwealth Ct. 438, 430 A.2d 351 (1981), we noted that "the question of what constitutes a reasonable fear of violence ultimately becomes a matter of degree. Where the confrontations on the picket line surpass harsh persuasion and become intimidation, a claimant is not required to test the threats in order to avoid disqualification for benefits." *Id.* at 441, 430 A.2d at 353.

In *Tickle,* we allowed benefits where pickets were intoxicated, were armed with steel balls and hammers, were making specific threats directed to claimants, and actually grabbed two members of claimants' class in order to dissuade them from going to work. Since *Tickle,* we have allowed benefits in a number of similar situations. *See Lakeview Forge Co. v. Unemployment Compensation Board of Review,* 36 Pa.Commonwealth Ct. 204, 387 A.2d 984 (1978) (striking workers threatened personal injury to claimants, broke windows at the plant, slashed tires and threatened people seeking to enter or leave the plant); *Westinghouse Electric Corp. v. Unemployment Compensation Board of Review,* 35 Pa.Commonwealth Ct. 150, 384 A.2d 1372 (1978) (pickets stopped trucks entering and leaving the plant, many of the pickets wore hard hats and carried clubs, one picket swung a club in the direction of a claimant's head, and a windshield was broken and violence threatened); and *United Parcel Service* (pickets were intoxicated, blocked ingress and egress of employees, made threats of personal injury and broke plant windows). These situations are similar to that found here where threats of violence were coupled with a show of force on the picket line which included actual violence. Here, the record establishes that pickets threw rocks and stones at workers leaving the plant, made threatening remarks to and concerning any Local 375 employees who might attempt to cross the picket line and shook vehicles con-taining security guards, banging on the windows of those vehicles and shouting threats. Further, one Local 375 member who did cross the picket line had his car vandalized.

Under these circumstances, we conclude that Claimant's fear of violence was reasonable and, therefore, that his refusal to cross the picket line was involuntary. Thus, Claimant is not ineligible for benefits under section 402(d) of the Law.

■ In a second argument, Employer maintains that, even if not reversed, the Board's decision should be vacated and the case remanded because Employer was denied due process. Employer claims that the case was not heard by an impartial adjudicator because Board Chairman Thomas Simon is a representative of the United Steelworkers' Association (USWA) and, as such, had an interest in the outcome of this case because the decision "could have a significant favorable impact on future determinations involving the USWA." (Employer's Brief at 23.) However, we need not address this argument because Employer waived its right to challenge Board Chairman Simon's impartiality by failing to make a timely motion for recusal under the Board's rules and regulations.[8] Employer cannot reasonably claim a violation of due process when it did not take advantage of its opportunity to be heard on the issue.

Accordingly, we affirm.

### ORDER

AND NOW, this 17th day of April, 1995, the order of the Unemployment Compensation Board of Review, in Appeal No. B–94–1–J–38, dated June 30, 1994, is affirmed.

banc court and are consistent with each other. Because the facts here are closer to those in *Tickle* than to those in *G.C. Murphy,* we have relied on *Tickle.* However, even applying *G.C. Murphy's* analysis, the result would be the same.

8. 34 Pa.Code § 101.62 states, in pertinent part, that a member of the Board may be challenged "at any time by an interested party *prior to the disposition of an appeal* [by the Board].... A challenge to a member of the Board may be presented orally at a scheduled hearing before the Board or its designee and made a part of the record, or a written challenge may be filed with the Board." *Id.* (emphasis added).