**BLACK LICK TRUCKING, INC., Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 14, 1995.

Decided Nov. 14, 1995.

---

Beverly A. Gazza, for petitioner.

Linda S. Lloyd, Assistant Counsel, for respondent.

Before DOYLE and NEWMAN, JJ., and RODGERS, Senior Judge.

DOYLE, Judge.

This is an appeal by Black Lick Trucking, Inc. (Black Lick) from an order of the Unemployment Compensation Board of Review (Board), which granted benefits to Robert C. Rhoades, Douglas H. Leightley, Floy L. Fennell, Chris L. Sherba, Donald K. Robertson, Steven L. Krall, Gary A. Everhart, Gary G. Painter, Francis J. Boston, Harold M. Toy and Timothy F. Pavelchick (collectively, Claimants), reversing the referee's order which had denied Claimants benefits under Section 402(d) of the Pennsylvania Unemployment Compensation Law, Act of December 5, 1936, Second Exec.Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(d).[1]

The facts are summarized as follows. Claimants were employed by Black Lick as

---

1. Section 402(d) provides as follows:
   An employe shall be ineligible for compensation for any week—
   (d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed: Provided, That this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating, in or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of who are participating in, or directly interested in, the dispute.

truck drivers to haul coal from Lucerne 6, a Helvetia Coal Company Mine in Kent, Pennsylvania, and Lucerne 8, another Helvetia Coal Company Mine in Clarksburg, Pennsylvania, to the Homer City Generating Station. On May 25, 1993, selected locals of the United Mine Workers of America (UMWA) initiated a work stoppage and established picket lines at the Lucerne 6 and Lucerne 8 mines. Claimants were members of UMWA Local 2364, a local which was not directly involved with the strike.

On May 25, 1993, Claimants reported to work but refused to cross the picket lines established by the coal miners at the striking mines, alleging that they feared for their safety. No coal was hauled from the mines at Lucerne 6 and 8 during the work stoppage; however, Black Lick obtained jobs for Claimants hauling stones and other material from June 2, 1993 until October 15, 1993, when they were temporarily laid off due to lack of work. The work stoppage ended on or about December 16, 1993.

Claimants filed applications for benefits with the Indiana Job Center, which denied benefits pursuant to Section 402(d). Each of the Claimants appealed and a consolidated hearing was held.[2] During the hearing, Black Lick requested the referee to dismiss the appeal, asserting that all of the Claimants had failed to state a reason for their appeal. However, the referee, although he found that the appeals were proper, issued one decision based upon the representative Claimant (but issued separate orders, one for each Claimant) affirming the Job Center's determination.

Each of the Claimants then appealed to the Board, stating that the reason for filing their appeal was "because of errors of law and fact." The Board reversed the referee

and granted benefits, holding that Claimants refused to cross the picket line because of fear for their safety. The Board also concluded that the issues addressed by the referee in his decision were not waived by the Claimants because they had filed proper appeals.[3] Black Lick's appeal to this Court followed.

Black Lick raises four issues: (1) whether the appeal of Claimants from the Job Center to the referee should have been dismissed because Claimants failed to identify any reasons for their appeal; (2) whether the appeal from the referee to the Board should have been dismissed because Claimants did not specify the reason for appeal; (3) whether Claimants refused to cross the picket line because of a reasonable and genuine fear of physical harm; and (4) whether Black Lick was required to demonstrate that continuing work was available when Claimants refused to cross a peaceful picket line.

Regarding the first two issues raised, parties are required to state "[t]he reasons for appeal" when filing an appeal from a decision of the job center to the referee. 34 Pa.Code § 101.81 (governing appeals from the Department). Additionally, appeals from the referee to the Board also require that a reason be stated. *See* 34 Pa.Code § 101.102 ("Information to be included in appeals from decisions of referees ... shall conform to the provisions of § 101.82....") "[W]hat is sought by the referee or Board is *some* indication, however inartfully stated, of precisely what error(s) occurred and where the tribunal should focus its attention." *Merida v. Unemployment Compensation Board of Review,* 117 Pa.Cmwlth. 181, 543 A.2d 593, 595 (1988), *appeal dismissed as improvidently*

---

**2.** This case was originally combined with *Bud Davis Trucking, Inc. v. Unemployment Compensation Board of Review* (Nos. 2500 through 2504 C.D.1994, filed November 14, 1995), which involves essentially the same factual scenario at issue here. Both Black Lick Claimants and Bud Davis Claimants were represented by the same attorney, and agreed to base the outcome of the case upon a representative Black Lick Claimant, Robert Rhoades. At the hearing before the referee, four Black Lick Claimants testified along with one Bud Davis Claimant. Counsel for Claimants stipulated that the testimony of the five Claim-

ants would apply to all of the Black Lick and Bud Davis Claimants. On appeal to our Court, we consolidated all the appeals relating to Black Lick Claimants into one case, and all appeals pertaining to Bud Davis Claimants into another case.

**3.** The Board also rendered its decision as to Rhoades only, but issued separate orders declaring that the Rhoades decision was binding on all of the Claimants.

*granted,* 524 Pa. 249, 570 A.2d 1320 (1990) (emphasis in original).

Claimants admit that they did not give specific reasons for their separate appeals to the referee or the Board, but argue nonetheless that the issues raised were not waived based upon our holding in *Jordan v. Unemployment Compensation Board of Review,* 119 Pa.Cmwlth. 375, 547 A.2d 811 (1988).[4]

In *Jordan,* the Office of Employment Security (OES) determined that the claimant was ineligible for unemployment benefits under both Section 402(e) (willful misconduct) and Section 402(h) (self employment). The claimant appealed both conclusions to the referee, who held that the claimant was not ineligible under Section 402(e), but was ineligible under Section 402(h). The claimant appealed to the Board only the Section 402(h) determination; the employer did not cross appeal. The Board reversed the referee as to Section 402(h), but also held that under Section 402(e), the claimant was ineligible for benefits.

The claimant appealed to this Court, arguing, *inter alia,* that the Board did not have jurisdiction to address the issue of Section 402(e) because the claimant had not appealed that issue, nor had the employer cross-appealed. We held that based upon 34 Pa.Code § 101.87 and 34 Pa.Code § 101.107(b), the Board could reach *both* issues although only one had been raised.

Section 101.87 of Title 34 of the Pennsylvania Code states in part:

**Issues considered on original appeal**

When an appeal is taken from a decision of the Department, the Department shall be deemed to have ruled upon all matters and questions pertaining to the claim. In hearing the appeals the tribunal shall consider the issues expressly ruled upon in the decision from which the appeal was filed. However, any issue in the case may, with the approval of the parties be heard, ...

Section 101.107(b) of Title 34 of the Pennsylvania Code provides in part:

The Board shall consider the issues expressly ruled upon in the decision [of the referee] from which the appeal was filed.

In *Jordan,* we interpreted these sections to mean that whatever issues the job center addressed the referee should likewise address, and the Board in turn should decide all of the issues the referee considered, regardless of whether a party specifically raised the issue on appeal to the Board.

■ Black Lick relies on *Merida* to support its contention that Claimants' failure to specify the reasons for their appeals waives all of the issues. Employer, however, misconstrues our holding. In *Merida,* the job center found that the claimant was ineligible for benefits due to willful misconduct pursuant to Section 402(e), 43 P.S. § 802(e). A hearing was held before a referee at which the employer's witnesses did not participate, but were present outside of the hearing room. Over an objection by claimant's attorney, a second hearing occurred during which the employer's witnesses were permitted to testify. The referee in affirming the job center, did not address the objection to the second hearing. On appeal to the Board, the claimant merely stated that his reason for appeal was that "he didn't agree with the decision" and did not raise the appropriateness of the second hearing. The Board upheld the referee's decision.

In affirming, we held that the claimant had waived the issue of the propriety of the second hearing because the claimant failed to indicate what errors it was asserting and a tribunal is not required to review the evidence in search of errors. This case is limited to its factual scenario. In *Merida,* the referee did *not* discuss in his decision the appropriateness of the second hearing and, therefore, that issue could not be considered by the Board pursuant to Section 101.107; that issue had not been specifically raised in the claimant's appeal to the Board, nor had it been addressed by the referee so it was waived.

---

4. *See also Wilder v. Unemployment Compensation Board of Review,* 106 Pa.Cmwlth. 109, 525 A.2d 852 (1987) and *Lenz v. Unemployment Compensa-* *tion Board of Review,* 61 Pa.Cmwlth. 166, 432 A.2d 1149 (1987).

In the appeal now before us, although the Claimants' petitions for appeal from the Job Center did not raise any issue specifically,[5] unlike the facts in *Merida*, the issues which were decided by the Job Center were the same issues addressed by the referee, and were subsequently discussed by the Board. Thus, pursuant to Sections 101.87 and 101.107, the referee and Board correctly considered the Claimants' appeals.

■ Black Lick also argues that Claimants were participating in the labor dispute which caused the work stoppage because they voluntarily chose not to cross the picket line and therefore, were participants in the strike. Specifically, Black Lick asserts that no substantial evidence exists to support the Board's finding that the Claimants' failure to cross the picket lines was due to a reasonable fear of violence. We are constrained to agree.

■ Claimants are ineligible for benefits under Section 402(d) unless, *inter alia*, they demonstrate that they did not participate in or become directly interested in the labor dispute; that they are not members of the organization that participated or was directly interested in the dispute. *Unemployment Compensation Board of Review v. Tickle*, 19 Pa.Cmwlth. 550, 339 A.2d 864 (1975). Furthermore, claimants who voluntarily refuse to cross peaceful picket lines are considered to be participating in the strike and are ineligible for unemployment benefits. *Id.*

■ In *Unemployment Compensation Board of Review v. G.C. Murphy Co.*, 19 Pa.Cmwlth. 572, 339 A.2d 167 (1975), this Court set forth the criteria on which to decide what actions by strikers constitute sufficient evidence to cause a non-striker's refusal to cross a picket line to be voluntary. In *G.C. Murphy*, we stated in relevant part:

(1) That mere rumors that violence will occur are not justification for refusal to cross peaceful picket lines to report for available work; (2) that the fact that in past strikes violence has occurred is not justification for refusal to cross peaceful picket lines; (3) that the violence necessary to justify a refusal to cross picket lines must, . . . be violence at the picket lines at the employer's premises in the pursuit of their usual employment; (4) that threats of violence . . . must, . . . , have the purpose and effect of preventing the claimants from working and must in addition be accompanied by a show of force at the picket lines sufficient to instill in a reasonable person a genuine fear for his personal safety; (5) that one occasion of violence or threats of violence accompanied by a show of force, followed by an extended period of peaceful picketing will not justify a continued refusal to cross picket lines . . .; (6) that a claimant who refuses to cross picket lines does not carry his burden of proving eligibility for unemployment by expressions of fear for his personal safety without proof of violence or threats of violence as described in (3) and (4) or proof of an occasion of violence. . . .

*Id.* at 173, 339 A.2d 167. A showing of threats of violence combined with a show of force on the picket line is sufficient to demonstrate that a failure to cross the picket line was involuntary; actual violence, however, does not need to be shown. *Tickle* (striking workers threatened to injure workers who crossed the picket lines. These threats combined with the fact that the strikers were intoxicated, armed with steel hammers and actually grabbed two non-strikers as they attempted to go to work, is sufficient to cause a reasonable person to be genuinely fearful for his/her safety).[6]

---

**5.** All but one Claimant stated "Please see attached" where the form requests the reasons for the appeal. The attachment was a letter from William B. Manion, Esq., counsel for UMWA Region 1, simply notifying the Department that Manion was counsel for the Claimants, that the appeals were enclosed, and that Manion requested that the cases be consolidated. Chris L. Sherba, a Claimant, only wrote in the appropriate space, "disagree on with Exzamner decision [sic]." In all of the Claimants' appeals from the

referee to the Board, they state that the generic reason for their appeal is "error of law and fact." The attachment did not delineate any reason for the appeal, only that they were appealing.

**6.** *See also Stone Container Corp. v. Unemployment Compensation Board of Review*, 657 A.2d 1333 (Pa.Cmwlth.1995) (threats of violence, coupled with actual force on the picket line, such as, throwing rocks, vandalizing an employee's car by slashing the tires and smashing the windows,

Applying the law to the facts of the instant case, we conclude that Claimants have failed to prove by substantial evidence that the picket lines were other than peaceful. The record shows that Rhoades testified that he had not even gone to the mines, the site of the pickets, and that he had merely been verbally threatened. Boston testified that he did not cross the picket line because he had heard rumors of violence at the picket lines, although no witness testified that any violence occurred. Pavelchick and Krall did not testify to any threats or acts of violence at the picket lines. (Only four Black Lick Claimants testified). Lastly, John Smith, a Bud Davis employee, testified that he went to the job site where the picket line was established and that the strikers verbally threatened him. *See supra* note 2.

Based upon this testimony, the Board found that "Claimant[s] . . . did not cross the picket lines because they were fearful for their safety and their families [sic] safety." (Finding of Fact No. 8) Although Claimants' fears may have been genuine, the record lacks any evidence that would support a finding that the threats and rumors of violence were coupled with a show of force on the picket line, which is a requirement in establishing that a refusal to cross the picket lines was involuntary. Thus, Claimants have failed to prove that they involuntarily refused to cross the picket lines.

■ Furthermore, Black Lick asserts that once it has been established that Claimants were participants in the work stoppage, the issue of availability of work is irrelevant. *Tickle*, 339 A.2d at 869 (" '[s]toppage of work which exists because of a labor dispute,' . . . , means any cessation of work by an employee due to a labor dispute, irrespective of whether or not continuing work is available."). We must agree here also that this is a correct statement of the law under *Tickle*.

Accordingly, Claimants are ineligible for benefits and the decisions of the Board are reversed.

rocking automobiles in which security guards were driving, etc., were sufficient acts to cause non-striking employees not to cross the picket

*ORDER*

NOW, November 14, 1995, the orders of the Unemployment Compensation Board of Review in the above-captioned matters are hereby reversed.

line out of fear for their safety and entitle them to benefits).